Loring, J.,
delivered tbe opinion, of. tbe court:
The court find in this case the facts to be, that— -
In July, 1861, C. K. Garrison bad contracted with tbe United States, under an order of the Ordnance bureau, to furnish ten thousand rifled muskets of French make, (Liege,) at $27 each, and failed to perform his contract.
On the 31st October, 1861, the said Ramsdell, for Smith, by letter of that date, proposed to the Secretary of War, the Hon. S. Cameron, to fulfil the contract made with the said Garrison “ with an arm equal in every respect to the one he (Garrison) had agreed to furnish, and at a price $6 per gun less than the price named” in Garrison’s order, i. e., for $21 per gun; and a sample of the gun he (Ramsdell) so proposed to supply was deposited in the office of General Ripley, chief of the Ordnance bureau.
On the 16th of November, 1861, the Ordnance bureau, under the orders of the Secretary of War, by written order of that date, authorized Ramsdell “ to furnish ten thousand arms in accordance with his proposition, as contained in his letter to the Secretary of War, dated October 31, 1861.”
Under this authority Mr. Smith contracted with the house of Boker & Company, merchants in New York, for the importation of the ten thousand muskets contracted for, at the price of about thirteen dollars per musket.
The guns were imported, and arrived at New York in January, 1862, and on the 13th of said January Ramsdell, for Smith, notified the chief of the Ordnance bureau that he was ready to deliver the guns, of which a sample had been deposited in his office, and that Mr. Smith, in New York, would deliver them to such person as the chief of the Ordnance bureau should direct, and that the guns were then in warehouse under control of Major Hagner in New York, the officer in charge of the Ordnance bureau there.
And on the 17th January, 1862, General Ripley notified Major Hagner that Mr. Ramsdell had informed him that the guns were ready for delivery, and that the sample gun left in Washington had been sent to him (Major Hagner) that day, and that Mr. Smith would attend to the delivery of the guns. And on the same day General Ripley notified Mr. Smith, by letter addressed to “ G. W. Ramsdell, care of Mr. Samuel B. Smith,” that the sample gun had been sent to Major Hagner.
On the: 17th of. January the sample gun, wrapped in paper and *515 sealed with the seal of the Ordnance bureau, was sent by it to the ordnance officer at New York, through W. K. Mehaffy, and by him delivered to Mr. Smith, who delivered it, wrapped and sealed as stated, to Captain Crispin, who was then in charge of the Ordnance office at New York; and Mr. Smith offered to deliver the guns to Captain Crispin, who, in the temporary absence of Major Hagner, was then the proper officer to receive and inspect the guns.
The guns were not received and inspected by the Ordnance office in New York, because it wished, by communicating with the Ordnance bureau, to ascertain the identity of the sample gun; and that there was no mistake as to the contract, as its price was considered to be far beyond the value of the guns, and was far beyond their price in the market, as the price of these guns had fallen, from the supply of superior arms and the disuse of these by the government.
The contract remained unacted upon till it was referred by the Ordnance bureau to the Secretary of War, Hon. E. M. Stanton, and by him to a commission appointed by him, and consisting of Hon. J. Holt and Bobert Dale Owen, and authorized as follows: “ to audit and adjust all contracts, orders, and claims on the War Department in respect to ordnance, arms, and ammunition, their decision to be final-and conclusive as respects this department, on all questions touching the validity, execution, and sums due or to become due on such contracts, and upon all other questions arising between contractors and the government on such contracts.” And Major Hagner was specially assigned to aid and assist the commissioners in their investigations.
And thereupon Mr. Smith waited on the Secretary of War, and stated to him his necessity of getting the guns received and paid for at once; that he had been ready nearly a month to make the delivery "and had made a tender of the guns. And the Secretary informed Mr. Smith that he must submit his contract, “ with all his proof, before the commission; and that the department would not act until the commission had decided upon the contract.”
And afterward, in March, 1S6S, Mr. Smith submitted his contract and proofs to the commissioners, and at various interviews with them, informed them that he was pressed to make payment for the guns, and was unable to make it until the government should pay him, and that by further delay he would he ruined; and the commissioners examined the said claim and the witnesses on either part, including the said Smith.
The commissioners rendered no adjudication on the contract, hut, instead thereof, “ called on Mr. Smith to make a proposition, based upon the allowance of a smaller profit to himself.” And thereupon Mr *516 Smith, in a letter addressed to the commissioners, and dated May 2d, 1862, stated that “ as a compromise in order to obtain money to meet obligations incurred in this connection” he would take $14 50 per gun. And this not being acceded to, Mr. Smith, upon an intimation made to him, that if he would take eleven dollars per gun, the commissioners would recommend the taking of the guns, proposed to the commissioners and agreed to deliver to the government the ten thousand guns at the price of eleven dollars each.
And the commissioners agreed and reported “ that eleven dollars should he paid for each arm, which upon inspection should be found as of serviceable quality as the best of the class of arms like sample, sound and in good condition, provided that no additional expense should be incurred by the United States,”
The War Department refused to act on the contract of Mr. Smith until the commission had decided thereon, and the commission made no adjudication thereon, hut substituted for such adjudication a requirement upon Mr. Smith of other proposals. He had no means of obtaining the money then due him, and which he needed to pay for his purchase of the guns, except by making such proposals as the commission would accede to.
Thereafter, the ten thousand guns were inspected and approved and received by the United States, and Mr. Smith was paid eleven dollars per gun, amounting to the sum of one hundred and ten thousand dollars, leaving one hundred thousand dollars of the original contract: price unpaid, for which this suit is brought.
The original contract with Mr. Smith was made without advertising for proposals, and the evidence showed that the public exigency in November, 1861, required the immediate and earliest possible delivery of guns f that there were none in market, and that there were no apparent means of obtaining them so readily as by importation or on an immediate contract therefor.
It also appeared in evidence that Mi-. Smith applied to James Duffy, who had been associated with Garrison in his contract with the United States, and requested Mr. Duffy to aid him in the substitution of his guns for Garrison’s, upon an agreement to share the profits in payment for his agency. That Mr. Duffy agreed to the proposal, and in his application for Mr. Smith to the Secretary of War, he, for purposes of his own, used the name of Mr. Ramsdell, by his authority in writing, and afterward Mr. Ramsdell confirmed such use of his name, and expressly authorized said Smith to deliver the guns and receive the money under said contract. The said Ramsdell was never *517 interested in the profits of said contract, and Mr. Duffy was interested therein only as above stated, and his interest was satisfied and released before' this suit was brought, and Mr. Smith was known as the party to the contract, to the Secretary of War, and the commission, before the -hearing before the commission.
And on the facts stated the court are of opinion—
That the United States contracted with said Smith to pay him $21 per gun for ten thousand guns, conforming in kind and quality to the sample gun deposited in the office of the chief of Ordnance bureau, upon their inspection and approval by the inspecting officers of the United States.
That when said ten thousand guns were delivered by said Smith and inspected and approved by the inspecting officers of the United States, and received by the United States, they thereby became liable to pay the said Smith said contract price of $21 per gun.
That said Smith is not barred of this suit by his proposal to take, and his acceptance of, eleven dollars per gun, under the circumstances above stated.
It was objected by the Solicitor that this action cannot he maintained, because “ neither Smith or Ramsdell have any standing in this court,” and because Ramsdell has no interest. But the evidence shows that Smilh was the party and the only party in interest in the contract; that he alone furnished the guns, and was alone entitled to the payment for them ; and that Duffy and Ramsdell were his agents, and merely means used for effecting his contract with the United States; and, as decided by the Supreme Court of the United States in the case of Ford v. Williams, 21 How., 287, in the words of its marginal note, “ where a contract is made by agent, the principal whom he represents may maintain an action upon it in his own name, although the name of the principal was not disclosed at the time of making the contract, and, although the contract be in writing, parol evidence is admissible to show that the agent was acting for his principal.” Here the contract, on which the suit is maintainable is by the letter on the part of Smith, signed Gr. W. Ramsdell, dated October 31,1861, and addressed to the Secretary of War, and the answer to it from the Ordnance bureau, dated November 16, 1861, and Ramsdell’s authority to Smith of November 20, 1861, is not necessary for the maintenance of the action ; and it is not an assignment, for the evidence shows Ramsdell had no interest to assign, and it is effectual only for its real purpose, that of confirming the use of his name, and with the rest of the evidence shows that it was used in an agency for Smith, and that the case was one of agency only, and in no way a case of an assignment, for the *518 whole interest in the contract was in Smith from the beginning to the end. Smith might have sued in his own name alone, on the evidence adduced, hut we have no formal pleadings in this court; and as the petition states truly the interest of parties, we think it sufficient. The mode or form of obtaining the contract may have been irregular, hut it does not appear that it subjected the government to any risk, for Ramsdell was liable on his signature to the letter of October 31, 1861, and the evidence is that he was a responsible person and his liability was only so much added to that of Smith who was liable as principal in the contract.
Then it was claimed that the expression in the original proposal “ with an arm equal in every respect to the one ” Garrison agreed to furnish was a warranty that Smith’s guns were equal to Liege guns. We think this is not so, because the circumstances show it was not meant for a warranty, or made or received in any expectation that it could be relied on as such. The guns were proposed to the government whose officers were experts in the matter, and official advisers for it, and the guns were to be inspected by them, and then a sample gun was delivered, and by the general rule where the purchaser has the means of judging for himself by sample, the legal presumption is that the only warranty is that the bulk shall conform to the sample in kind and quality; and that they did here is proved by the inspection and approval and acceptance of the guns.
Then it was claimed that this suit was barred by Mr. Smith’s proposal to take eleven dollars per gun, and the payment of that price to him. But that was at the most an agreement to take a part of the debt for the whole when the whole was due, and as nudum pactuem, is of no legal obligation. Moreover the officers and agents of the War Department refused that adjudication of Mr. Smith’s claim to which he was entitled, and thus in fact enforced from him the proposal he made as his only means of obtaining any part of the money due him, which he needed to meet his engagements for the guns, and this was legal duress, which voided the transaction made under it.
The contract made may have been, from subsequent circumstances or otherwise, a disadvantageous one for the government, but it was made with due legal authority by the Secretary of War acting through the Ordnance department, according to statute, and, for the reasons stated, the court think it valid against the United States, and that Mr. Smith is entitled to the balance of his contract price unpaid, amounting to the sum of one hundred thousand dollars, and a certificate will be made accordingly.