Mr. Justice Bkadley
delivered the opinion of the court.
tn the first of these cases, the facts found were, that on the lGth of November, 1862, the ferry-boat Tallacca, owned by the claimant, was chartered by Captain Ferguson, an assistant quartermaster of the United States Army, at the rate of $115 per day, for every day she might be employed in the service of the United States, and until returned to Alexandria, where she was lying; and that the said boat continued in the service of the Government from the date of the charter-party until the 31st of July, 1863, and was paid at the agreed rate up to the last of February, 1863, without objection; but that, on the 13th May, 1863, the Quartermaster-General disapproved of the charter-party by the following order: “The charter of the Tallacca is disapproved by the Quartermaster-General. She will be paid for only at the rate of $75 per day from the' date of her charter, so long as she may be retained in the service. The excess of $40 per day already paid will be deducted on the present settlement for her services-from March 1, 1863,” &c. The claimant was notified of the contents of this order during the' month of May. He refused to consent to the reduction, but has not shown whether, on being notified of this order, he determined to allow his boat to remain in the service at the reduced rate, or sought to take her out of it. The boat in fact remained in the service until July 31, 1863. No further pay *266 ment was made until December, 1863, when the quartermaster stated the account at the reduced rate, deducted the excess of $40 per day paid on the former settlements, and paid the claimant the balance. The claimant receipted for this balance as u in full of the above account.”
Upon these facts the Court of Claims decided that the claim■ant was entitled to be paid at the rate named in the charter-party until he received notice of the reduction made by the Quartermaster-General, and, after that, at the reduced rate.
In this we think, on the principles determined by this court in the late case of the United States vs. Child and ah, the Court of Claims erred. From the time that the order of the 'Quartermaster-General was made, disapproving of the charter-party, and razeeing the rate for the whole period of service, the •case was clearly one of dispute, at least, if not one of acquiescence on the part of the claimant. Notwithstanding' this order he permitted his boat to remain in the service until the 31st of -July, knowing the change of terms which the Quartermaster-General had made. It cannot be pretended that there were two lettings, or two charter-parties, of the vessel. There was only one; and as to this one the Government determined to allow one rate, and the claimant insisted on’another. The ■Government stood on the order of the superior officer, and insisted that this should govern the contract; the claimant insisted the contrary. Under these circumstances the final -determination of the latter to take the balance of the account as made out on the basis contended for by the Government, .and his giving’ a receipt in full is clear evidence that he agreed to take that balance in satisfaction of the claim; and this fact, ¡under the circumstances of the case, concludes him from making any further demand. The judgment is, therefore, reversed -as to this count.
In the other appeal, arising upon the second count, in which the claim was for the use of the barge William E. Hunt, the Court of Claims dismissed the claim on the ground that it was not presented in conformity with a rule of practice which the ■court then had, but which lias since been abrogated. This rule required that where the case was such as is ordinarily settled in ■any Executive Department, the petition should show that application for its allowance had been made to that Department, and without success, and its decision thereon. However useful and *267 proper such a rule may liave been prior to tlie enactment of the law passed June 25, 1868, which requires the Attorney-General to obtain from the proper Department, and the Department to furnish such facts, circumstances, and evidence as it might be in possession of in relation to any claim prosecuted in the Court of Claims, we are of opinion that it was not competent for the Court of Claims to impose it as a condition of presenting a claim in that court. Instead of being a rule of practice, it was really an additional restriction to the exercise of jurisdiction by that court. It required the claimant to do what the acts giving the court jurisdiction did not require him to do before it would assume jurisdiction of his case.
The act of 1855, which created the court, declares that it shall “ hear and determine all claims founded upon any law of Congress, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the Government of the United States, which may be suggested to it by a petition filed therein.’1 The rule adopted by the court required that the claimant .should not only have such a claim as stated in the act, but should have first gone through the Department which might have entertained it, before he would be permitted to x>roseeute in that court. This was establishing a jurisdictional requirement, which Congress alone had the power to establish.
This judgment of dismissal must, therefore, be reversed.
The judgment of the Court of Claims is reversed upon both appeals, and the record is remitted with directions to enter a decree of dismissal as to the first count in the petition, and proceed to a hearing on the second count.