OPINION.
Richardson, J.,
delivered the opinion of the court:
In each of these cases the claimant seeks to recover the difference between the salary established by law for the office which he held and the amount paid to him iu accordance with the appropriations made by Congress.
The claimant Mitchell was an interpreter at the Santee Indian Agency in Nebraska, duly nominated by the proper Indian agent and approved by the Department of the Interior, in accordance with the provisions of Revised Statutes, section 2068. He held the office and performed its duties during a period of three years and seven months.
By section 2070 of the Revised Statutes the salary of an interpreter employed elsewhere than in Oregon, Utah, and New Mexico, as was the claimant Mitchell, was fixed at $400 a year.
The annual appropriation acts for the time of the service of Mitchell appropriated only $300 a year for his salary (Act of May 27,1878, ch. 142, 20 Stat. L., 63; Act of February 17, 1879, ■ch. 87, 20 Stat. L., 295; Act of May 11,1880, ch. 85, 21 Stat, L., 114; Act of March 3, 1881, ch. 137, 21 Stat. L., 485), and he was paid in accordance therewith, making for the whole time a sum less by $358.33 than the amount of the salary fixed by the Revised Statutes.
The claimant Lightner was an Indian agent at the Santee Indian Agency, and was one of the fourteen Indian agents authorized by Revised Statutes, section 2052, for tribes east of the Rocky Mountains, and whose salary was there fixed at $1,500 a year each.
By the annual Appropriation Act of Map 27^ 1878, chapter 142 (20 Stat. L., 63), the sum of $1,000 only was appropriated for the salary of that agent for the fiscal year ending June 30, 1879. By the subsequent Appropriation Acts for the fiscal years ■ending June 30,1880, 1881, and 1882 (Act of February 17,1879, 20 Stat. L., 295; Act of May 11, 1880, ch. 85, 21 Stat. L., 114; Act of March 3,1881, ch. 137, 21 Stat. L., 485), the sum of $1,200 *286 each year only was appropriated for that purpose. Under these appropriations the claimant was paid, in all, a sum less-by $1,441.48 .than the amount of his salary for the time of service as established by the Eevised Statutes.
The claimant Belknap was one of the four Indian agents for the tribes in California which, by Eevised Statutes, section 2052, the President was authorized to appoint at a salary of $1,800 a year.
By the several annual appropriation acts for the fiscal years ending June 30, 1879, 1880, 1881, and 1882, the sum of $1,000' a year only was appropriated for his office. (Act of May 27, 1378, ch. 142, 20 Stat. L., 63; Act of February 17, 1879, cli. 87,. 20 Stat. L., 295; Act of May 11, 1880, ch. 85, 21 Stat. L., 114; Act of March 3,1881, ch. 137, 21 Stat. L., 485.) He was paid in. accordance with the appropriations a sum less by $3,400 than the salary fixed by the Eevised Statutes.
Each of these claimants, having held an office to which there-was a fixed salary attached by law, is entitled to recover the full amount, less the sums which have been paid to him. It is-no defense that Congress failed to appropriate the entire amount, due while it left unrepealed the law which established the salary.
It was said by the Chief Justice, speaking for the court, in Patton’s Case (7 C. Cls. R., 371) :
All questions of salary are questions of contract. Whether the salary he fixed hy law, or hy the order of a Department under authority of law, the-Government contracts to pay the officer his salary, and, failing to do so, is-liable to he sued therefor.
The United States can no more discharge its contracts by part, performance than can an individual person do so. Congress-may fail to appropriate, in whole or in part, the money required, for payment of a public creditor, and thus leave the public officers without authority to draw the money from the Treasury for that purpose, but the indebtedness and the liability to pay remain in force.
The legal liability of the Government does not generally depend upon appropriations. The constitutional provision in article 1, section 9, that “ no money shall be drawn from the-Treasury but in consequence of appropriations made by law,’"' is a mere limitation and restriction upon the executive officers of theTreasury Department, and does not prevent Congress, the *287 law-making power, from involving the Government in contracts-to pay money to any extent. When suck contracts are made-tke parties who acquire rights to compensation thereunder must wait until an appropriation is made before they can receive their money, but the right on their part and the obligation on the-part of the United States remain unchanged. Failing to obtain direct appropriations for their benefit, public creditors may sue-in this court, and thus obtain payment out of any money appropriated for the payment and satisfaction of private claims. (Rev.. Stat., § 1089.)
In the present cases Congress saw fit to allow the statutes-fixing the claimants’ salaries to remain unrepealed until after the periods of time during which they held office, and then they repealed the provisions. (Act of May 17, 1882, 22 Stat/L., 70;,. Act of March 1,1883, 22 Stat. L., 434:) That repeal, however, affects only salaries from and after the passage of the acts, and does not take away the claimants’.accrued rights. It was so-held by the Supreme Court in the Twenty-per-cent, cases of Welch, &c., v. The United States (20 Wall., 179, and 9 C. Cls.. R., 103).
Congress did not, as in Fisher’s Case (15 C. Cls. R., 330), provide in these appropriation acts that the amounts appropriated should be in full compensation for the salaries, and so those acts-did not work even a temporary repeal.
We have repeatedly held that salaried officers may recover in this court the balance due them under general laws, over and above what Congress has neglected to appropriate for that purpose, and we reaffirm the doctrine in these cases. (Graham’s Case, 1 C. Cls. R., 380; Collins’s Case, 15 C. Cls. R., 22; French’s Case, 16 C. Cls. R., 419.)
It appears that, in paying these claimants, the disbursing officers took a receipt from each one of them, on a printed blank,, in which it was stated that the sums received by them were “in full of our pay for services for the period herein expressed.”' On the part of the defendants the question is raised whether or not this is not an accord and satisfaction and a discharge of all obligations to pay the balance. We are clearly of opinion that, it is not so.
The claimants’ salaries, fixed by statute, were not disputed or disputable claims, such as a voluntary release in full, made-upon part payment, has been held, under certain circumstances,. *288 to be a discharge of the whole. (Ramsdell's Case, 2 C. Cls. R., 508; Livingston's Case, 3 C. Cls. R., 131; Martin's Case, 5 C. Cls. R., 215; affirmed on appeal, 9 C. Cls. R., 126; Sweeney's Case, 5 C. Cls. R., 285; affirmed on appeal, 17 Wall., 75, and 8 C. Cls. R., 134; Clyde's Case, 13 Wall., 35, 38, and 7 C. Cls. R., 262.)
If, however, the amounts of the salaries actually due the claimants were matters of doubt and uncertainty, it was no part • of the duty of the disbursing officers to raise that question and to exact a release of the whole upon payment of part only. Such officers were not charged with the duty of settling controverted claims upon the Government in disbursing money appropriated for salaries, and they had no authority to exact re- ■ ceipts in the form of a release in full of claims which were paid ■ only in part. The disbursing officers were dealing, not with ■ disputed claims and controverted rights, but solely with the disposition of the money appropriated by Congress which had been intrusted to them to pay out, and they were taking receipts for the actual amount disbursed for the sole purpose of ■ settling therewith their own accounts in the Treasury Department.
We must construe the receipts in the light of the circumstances under which they were given, and with reference to the matters in charge of the disbursing officers. Taking these into consideration it is clear that the parties had no intention of settling and releasing any rights of claimants under the acts ■ establishing their salaries, and that all that was meant by -the words “in full of our pay for services” was that the disbursing • officers had paid the full amount appropriated by Congress and intrusted to them to disburse. Beceipts thus given discharge no indebtedness beyond the amount of money received. Even in Fisher's Case (15 C. Cls. R., 330), where there was a receipt in full on the payment of a salary, the amount of which was not ■only disputable and disputed, but as to which the judges of this court were divided in opinion, we gave no force or effect to such .a receipt.
The judgment of the court is that the several claimants re-cover—
The claimant Mitchell the sum of $358.33.
The claimant Lightner the sum of $1,441.48.
The claimant Belknap the sum of $3,400.
And it is so ordered.