**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 85–1029, 85–1043.

District of Columbia Court of Appeals.

Argued Oct. 17, 1985.
Decided May 20, 1986.
Rehearing and Rehearing En Banc
Denied Feb. 19, 1987.

William H. Lewis, Gen. Counsel, with whom Cecily E. Collier, Washington, D.C., was on brief for appellant District of Columbia Bd. of Elections and Ethics.

K. Gregory Tucker, with whom Dwight C. Smith III and Perry H. Apelbaum, Washington, D.C., were on brief for appellant District of Columbia Committee on Overnight Shelter.

Lutz Alexander Prager, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief for appellee.

Benoit Brookens, pro se.

Before NEBEKER, MACK and NEWMAN, Associate Judges.

NEWMAN, Associate Judge:

Does the "laws appropriating funds" exception to the citizens' right to make laws through the initiative process prohibit enactment of the District of Columbia Right to Overnight Shelter Initiative of 1984?[1] The trial court answered "Yes" and granted the District of Columbia's motion for summary judgment on its prayer for declaratory judgment. We answer the same question "No." We reverse and remand for entry of judgment on the motion for summary judgment made by the Committee on Overnight Shelter (Committee).

Stephen O'Neil, a registered voter in the District of Columbia, submitted the shelter initiative to the District of Columbia Board of Elections and Ethics (Board) on behalf of the Committee. The initiative sought to establish a right to shelter "which to a reasonable degree maintains, protects, and supports human health, is assessable, safe, and sanitary, and has an atmosphere of reasonable dignity." Initiative 17, § 2.[2] The Board approved the initiative as to form and subject matter, thereby ruling that it did not violate the "laws appropriating funds" exception. Thereafter a petition in support of the initiative in proper form and bearing the requisite number of

voter's signatures was submitted to and confirmed by the Board. On August 1, 1984, the Board ordered the initiative placed on the November 6, 1984 ballot.

On October 11, 1984, the District of Columbia sued the Board seeking a declaratory judgment that the shelter initiative violated the "laws appropriating funds" exception; the District also sought injunctive relief. The Committee and Benoit Brookens were granted leave to intervene. The trial court denied the preliminary injunction request because irreparable harm was not shown. On November 6, the electorate approved Initiative 17.[3] The District then sought summary judgment on its declaratory judgment prayer.[4] The Committee filed a cross-motion for summary judgment. The trial court granted the District of Columbia's motion ruling that while the initiative, by its specific language, did not appropriate funds, it violated the exception by: (1) stripping the Mayor and the Council of the District of Columbia of discretion concerning provision of shelter; (2) impermissibly launching the appropriations process, and (3) creating a judicially enforceable right to shelter.[5] These appeals followed.

This case is the third in which we have considered the impact of the "laws appropriating funds" exception to the initiative right in the District of Columbia. We first

---

1. The exception is contained in D.C.Code § 1–281 and provides:

    Definitions.

    (a) The term "initiative" means the process by which the electors of the District of Columbia may propose laws (except laws appropriating funds) and present such proposed laws directly to the registered qualified electors of the District of Columbia for their approval or disapproval.

2. See note 3, infra and accompanying text. The summary statement for the initiative, submitted according to statutory requirements, states:

    The District of Columbia, in recognition that: (1) All persons have a right at all times to overnight shelter adequate to maintain, support, and protect human health; (2) The costs of providing adequate and accessible shelter to all in need are outweighed by the costs of increased police protection,

medical care, and suffering attending the failure to provide adequate shelter; and (3) It is in the best interest of the District to provide overnight shelter for the homeless, hereby establishes in law the right to adequate overnight shelter, and provides for identification of those in need of shelter and provision of such shelter.

3. Initiative 17, as enacted, is presently codified at D.C.Code §§ 3–601 et seq. (1985 Supp.). It became law on March 14, 1985, after the congressional layover period. See D.C.Code § 1–233(c)(1) (1984 Cumulative Supp.)

4. See McIntosh v. Washington, 395 A.2d 744, 748–49 (D.C.1978) (The Superior Court has authority to render declaratory judgments in cases within its jurisdiction.)

5. The court denied the Committee's cross-motion.

addressed this exception as applied to the Convention Center initiative. *See Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics,* 441 A.2d 871 (D.C.1980), vacated when we went en banc in *Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics,* 441 A.2d 889 (D.C.1981). We next considered the exception with respect to the Unemployment Compensation Initiative of 1984. *See District of Columbia Board of Elections and Ethics v. Jones,* 481 A.2d 456 (D.C.1984). In those opinions we outlined the general principles of law governing initiatives and need not repeat them here.[6] Given our prior determination that the exception language is facially ambiguous, it is appropriate to examine both our prior decisions and the legislative history of the exception to resolve the question presented here.

In *Convention Center* (en banc) the plurality opinion construed the "laws appropriating funds" exception as follows:

Accordingly, we conclude that "the laws appropriating funds" exception prevents the electorate from using the initiative to 1) adopt a budget request act or make some other affirmative effort to appropriate funds....

. . . . .

Accordingly we further conclude that the "laws appropriating funds exception does not preclude initiatives (1) to establish substantive authorization for a new project, (2) to repeal existing substantive authorization for a program (without rescinding its current funding) or (3) to prohibit future budget requests.

441 A.2d at 913–14.[7]

The four judge dissent in *Convention Center* (en banc) went further and said:

All that the "laws appropriating funds" exception actually means, in the concrete, is that the people may not seek, through the initiative, to propose and pass an actual budget request act.

441 A.2d at 926.

In *Jones,* we were called upon to address the District of Columbia Unemployment Compensation Initiative of 1984. We held that the Board had properly ruled the initiative barred by the "laws appropriating funds" exception. The unemployment initiative constituted an affirmative effort to appropriate funds because it would have funded higher levels of unemployment benefits without an opportunity for the Mayor and the Council to consider its financial impact on the city. Under the interlocking local and federal unemployment compensation structure, funds are initially drawn from a pre-existing District unemployment fund until this fund is exhausted. Then the Office of Unemployment Compensation in the D.C. Department of Unemployment Service borrows money from the U.S. Treasury, which the District must repay with interest. We quote, with approval, the Committee's brief in this court summarizing the essence of the holding in *Jones:*

It was the self-actuating and automatic aspects of the proposed initiative ... provisions which would permit ... expenditures and then force the District government ... to make interest payments [on loans] and seek additional appropriations

---

6. *See Convention Center, supra,* 441 A.2d at 896–99 (en banc) (Sections III A and B(1), *Convention Center, supra,* 441 A.2d at 874–78 (division) (while the division opinion was vacated when we went en banc, the two judges constituting the division majority reaffirmed their adherence to the rationale of the division majority opinion in their concurrence with the results in the en banc decision. *See Convention Center, supra* (en banc) 441 A.2d at 920–21.

7. Indeed, there is nothing in the concurring opinion in *Convention Center* (en banc) which is at odds with the section of the plurality opinion quoted above. Members of the court in both the plurality and concurring opinions were of the view that the initiative was an invalid attempt to impound funds already appropriated by Congress. These two opinions diverged on the question of whether a "budget request act" was a law within the meaning of D.C.Code § 1–281 (1981).

which this Court held to constitute an impermissible "affirmative effort to appropriate funds."

Appellant's Brief at 20, *District of Columbia Board of Elections and Ethics v. District of Columbia*, Nos. 85–1029, –1043.

The legislative history of the exception compels the interpretation we give it in this case. That history shows that the Council did not exclude a matter from the initiative right because of its prospective fiscal impact. The legislative history speaks quite plainly on this point:

\* \* \* \* \* \*

MR. DIXON: It is possible, for example, that the initiative could put in place a structure or could cause an action by the government that would have fiscal impact, just like we as Council members can introduce legislation to establish structures—

\* \* \* \* \* \*

MR. TUCKER: ... The question is really one of are there any limits—to what they might offer in terms of fiscal impact? If the electorate decides they thought their actions were such that they don't care what it cost and they so voted, then that becomes law.

MR. DIXON: It is the same process, Mr. Chairman. If we were to put in place a massive structure to establish an agency that was a massive structure and it would have had an impact on us fiscally, then we would have to fund this process and we would have to fund half the legislation we put in place during the normal taxation and funding process. The community can do the same thing, if they felt they wanted a structure. They would set it in motion and put it in place. We would have to vote for tax and money for that.

MR. CLARK: I understand that the citizenry can vote the matter and that is for purposes of city law making outside of Congress. That is decisive. Then we get to vote the taxes, then we get to vote the recall.

MR. TUCKER: That is right. The answers to all your questions are yes.

\* \* \* \* \* \*

MR. TUCKER: What they can do in an initiative is they can vote a fiscal impact which will add millions of dollars to the operating budget and recall you for voting the tax to pay for it. That is exactly what this Bill can do.

MR. BARRY: Mr. Chairman, I have the pleasure to serve on the Committee. I would like to disagree with a couple of points. This Council can place legislation authorizing the establishment of entities. We established the Office of Latino Affairs. We have also put into our budgetary process that to put in that measure some $50,000. My interpretation is that is authorizing legislation and it is not appropriated legislation. That is, the Council in its budgetary process will decide to exclude the $5 million health center that the community had authorized us to build and operate, if during the budgetary process the Council voted against it. That was my understanding from the staff, that authorizing legislation as we do but it wasn't appropriating legislation....

MR. DIXON: It is correct on the initiative section. We passed it. The electorate can initiate a tax if they want to, but they cannot appropriate that money. They can initiate any measure they want to initiate but they cannot initiate the spending of that money. That is not in their power to do.

\* \* \* \* \* \*

MR. TUCKER: Mr. Chairman, I don't want to interfere. This is not a very complexed approach and it gives a lot of authority to the community. It is not unique. We do it now. We often have requests for reprogramming in certain areas. If we do not reprogram money or redirect money, we then begin maybe an issue that could be raised in court. It is not an uncommon issue we are talking about. Whether we want to give the community the authority to do that is

something different, but it is not uncommon in terms of putting that dynamic in place. In the example you gave of the initiative, that decision comes from the government so it participates and controls both ends of the decision. This gives one part of the decision to the community and we find the answer to the other part, which will be confusing that that is part of the educational process of initiative and referendum. It is a very difficult and complicated process.

Council of the District of Columbia, Eighth Legislative Meeting, Council Period Two, First Sess. 18–13 (April 5, 1977).

▇▇▇ The trial court concluded that the shelter initiative stripped the elected officials of discretion to make adjustments in funding of various projects. We disagree. Unlike the unemployment compensation initiative, the shelter initiative contains no self-actuating funding mechanisms. The funding level for overnight shelter still rests within the power of the elected members of the District of Columbia government and Congress.[8] The fact that the shelter initiative sets "standards," as the trial court found, does not require a different result. Decisions concerning the implementation of the shelter initiative are still broadly vested in the elected government. This distinguishes the shelter initiative from the unemployment compensation initiative. *See State ex rel. Card v. Kaufman,* 517 S.W.2d 78, 80 (Mo.1974) (compensation initiative affording elected officials of the city no discretion in the matter of salaries is unconstitutional); *Kansas City v. McGee,* 364 Mo. 896, 269 S.W.2d 662, 665 (1954) (same).[9]

▇▇▇ The trial court also found the shelter initiative barred by the "laws appropriating funds" exception based on its conclusion that the initiative created judicially enforceable rights for those who qualify for the benefits of the program. Section 7

of the initiative, now codified as D.C.Code § 3–606 (1985 Supp.), reads:

§ 3–606. Judicial redress.

Any person aggrieved by a failure of the District of Columbia to provide the overnight shelter declared to be a right by this chapter, or by an action that is likely to lead to such a failure, may sue for relief in any court of competent jurisdiction. The court may grant such relief as it deems appropriate. Sovereign immunity shall not bar actions to enforce rights established by this chapter. Reasonable attorneys' fees and court costs may be awarded to the prevailing party, other than the government, for actions brought under this section.

Although § 3–606 does provide for suit by an aggrieved party where the District of Columbia fails to provide appropriate overnight shelter, we disagree with the trial court that this renders the initiative violative of the "laws appropriating funds" exception. In our view neither the fact that the initiative may be denominated loosely an entitlement program nor the provision for judicial review make an initiative a law appropriating funds. The Supreme Court dealt with a somewhat analogous issue in *Bengzon v. Secretary of Justice,* 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1937). The Court held that a statute entitling justices of the peace to severance payments did not constitute an appropriation act. Other courts have made similar holdings. *See, e.g., State ex rel. Chase v. Preus,* 147 Minn. 125, 179 N.W. 725 (1920) (statute directing state to assume certain counties' expenditures and directing state treasurer to pay them is not an appropriation; *Mitchell v. United States,* 18 Ct.Cl. 281, 286–87 (1883) (Congress may involve the government in contracts to pay money; payment however must await an appropriation).

▇▇▇ Generally, courts are without power to compel the appropriation of funds. *See*

---

8. For an explanation of the Congressional role in the appropriation process, *see Convention Center, supra,* 441 A.2d at 904–05 (en banc).

9. This same analysis leads us to reject the trial court's conclusion that the shelter initiative impermissibly launches the appropriations process.

*National Association of Regional Councils v. Costle,* 184 U.S.App.D.C. 98, 105, 564 F.2d 583, 590 (1977) ("unless a court can rely on a statutory authorization, it simply lacks the power to order the obligation of public funds, regardless of how appropriate a remedy that order would be." *Id.*). Accord *Reeside v. Walker,* 52 U.S. (11 How.) 272, 290–91, 13 L.Ed. 693 (1851); *Mitchell, supra,* 18 Ct.Cl. at 286–87; *Collins v. United States,* 15 Ct.Cl. 22, 35 (1879).

We can find no legislative intent to exclude this type initiative from the initiative process per se. Some such initiatives, because of particular features, may run afoul of the exception as did the unemployment compensation initiative. *See Jones, supra.* However, to construe the exception in the manner suggested by the District of Columbia in this case would be to effectively write the initiative process out of existence.

*Reversed.*

Before PRYOR, Chief Judge, and * NEBEKER, * MACK, * NEWMAN, FERREN, BELSON, TERRY, ROGERS and STEADMAN, Associate Judges.

### ORDER

PER CURIAM.

On consideration of appellee's petition for rehearing or rehearing en banc, the responses, and the reply thereto, it is

ORDERED by the merits division * that the petition for rehearing is denied; and it appearing that the majority of the judges of this court has voted to deny the petition for rehearing en banc, it is

FURTHER ORDERED that the petition for rehearing en banc is denied.

Separate statement of NEBEKER, Associate Judge, of reasons for voting to grant the Petition for Rehearing or Rehearing En Banc.

In its Petition for Rehearing or Rehearing En Banc, the District of Columbia for the first time has argued that our decision in this case could produce a fiscal hemorrhage for the District of Columbia because of the possibility of money judgments being rendered against it under the initiative. This is so, the District says, because Congress annually appropriates funds sufficient to pay judgments against it in the face of the courts' power to compel payment of judgments out of existing appropriations for judgments. Thus, it contends, our decision offends the laws-appropriating-funds proscription.

In response to the petition, the court requested filing of supplemental memoranda on the issue whether despite the judicial review section, D.C.Code § 3–606 (1986 Supp.), the laws-appropriating-funds proscription, D.C.Code § 1–281(a) (1981), compels the conclusion that the courts lack jurisdiction to award money judgments. The court cited the severability clause appearing in D.C.Code § 3–607 (1986 Supp.).

In its reply in support of its petition and in response to the court's order, the District of Columbia has said

[t]hat the initiative would probably no longer be a "law appropriating funds" if the division opinion were amended to hold—unmistakably—that courts may not award damages *or* attorneys' fees for injuries resulting from the denial of rights created by the initiative, except to the extent that the Council has specifically budgeted for such a program. (Footnotes omitted; emphasis in original.)

If implemented, nearly all initiatives would require expenditure of public funds. Since appropriation must precede expenditure, a broad reading of the initiative prohibition would virtually eliminate that kind of plebiscite. In my view, the Council did not intend that result when it provided the right of initiative. Accordingly, the narrow construction given the prohibition, barring direct disbursement of funds—*e.g., District of Columbia Board of Elections & Ethics v. Jones,* 481 A.2d 456 (D.C.1984), seems appropriately to reflect legislative intent.

It may be argued that the issue which the District invites us to decide is not ripe at this time. A majority of my colleagues

seem to take that view for they decline the invitation. They seem to deem it better that this court wait to decide this issue if an appeal is taken in an action seeking a money judgment based on provisions of the initiative. On the other hand, the severability of the judicial review provision, as violative of the appropriation proscription, can be viewed as ripe for decision. Though not earlier presented to us on brief, it could have been advanced then and the division no doubt would have decided it. It is raised by the District on rehearing. Given the importance of the question, I join Judges Belson, Terry, and Rogers in voting to grant rehearing en banc. I also vote to grant rehearing by the division.

Separate statement of ROGERS, Associate Judge, with whom BELSON and TERRY, Associate Judges, join, on the Petition for Rehearing En Banc.

The question of the proper interpretation of the effect of the phrase "laws appropriating funds," D.C.Code § 1–281(a) (1981), on the scope of the initiative power of the District of Columbia electorate has been presented to this court on several occasions.[1] Still basic questions remain. The division opinion in the instant case acknowledges that the issue is one of first impression for which there is no case directly on point.

Unlike previous initiatives considered by the court, the shelter initiative includes the mechanism of court judgments to obtain funding to carry out its purposes. The division opinion establishes that the initiative creates an entitlement. In view of the scope of the homeless problem, and the manner of funding the payment of judg-

ments against the District of Columbia government, the initiative has the potential for having a major impact on District of Columbia revenues. Consequently, the division opinion leaves unclear the scope of our decision in *District of Columbia Board of Elections & Ethics v. Jones, supra.* Since this is clearly an important issue [2] and, given the pace of litigation, it is likely to be some time before it will again be a posture to be considered by the en banc court, I see no reason to wait until scarce fiscal and judicial resources have been expended, and vote to grant the petition for rehearing en banc.

---

1. *Hazel v. United States,* 516 A.2d 944 (D.C.1986) (per curiam) (rejecting, on basis of the division opinion in the instant case, a challenge to the D.C. Mandatory-Minimum Sentences Initiative of 1981 as within exception for "laws appropriating funds"); *Convention Center Referendum Committee v. District of Columbia Board of Elections & Ethics,* 441 A.2d 889 (D.C.1981) (en banc) (initiative compelling defunding of Convention Center for which funds had been authorized by Act of Congress violates the D.C. Charter prohibi-

tion on "laws appropriating funds"); *Board of Elections v. Jones,* 481 A.2d 456 (D.C.1984) (initiative raising unemployment benefits and disbursing District government funds without further legislative action violates prohibition on "laws appropriating funds.").

2. *See Carleton v. United States,* No. 84–936 (D.C. filed July 10, 1986) (statement of Judge Nebeker on denying the petition for rehearing en banc).