**Robert JOHNSON, et al., Appellants,**

v.

**Sidney DANNEMAN, et al., Appellees.**

**No. 87–110.**

District of Columbia Court of Appeals.

Argued Nov. 24, 1987.

Decided Sept. 21, 1988.

---

---

Andrea Ferster, with whom Eric Glitzenstein, Washington, D.C., was on the brief, for appellants.

James M. Christian, with whom Geoffrey R. Brigham, Washington, D.C., was on the brief, for appellee Danneman.

William H. Lewis, General Counsel, Washington, D.C., for appellee District of Columbia Board of Elections and Ethics.

Before MACK, NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

This is an appeal from an order of the Superior Court denying appellants' request for attorney's fees and costs under D.C. Code § 1–1320(e)(3) (1987). Appellants, Robert Johnson and the Bottle Bill Initiative Campaign, successfully intervened on the side of the District of Columbia Board of Elections and Ethics ("the Board") in an action brought by appellee Sidney Danneman challenging the Board's summary statement and short title of a proposed initiative. If approved by the voters of the District of Columbia, the initiative would have required deposits on all containers of soft drinks, beer, and wine coolers sold in the District. Appellants argue that they are eligible for an award of fees from either Danneman or the Board, because they proposed the initiative and because section 1–1320(e)(3) expressly provides for

---

a fee award to proposers who successfully defend challenges to initiative formulations in the Superior Court. We read the statute more narrowly. We conclude that section 1–1320(e)(3) does not authorize a fee award to proposers who intervene in defense of proposed initiative language. Thus we hold that, in the absence of statutory authority, appellants may not recover attorney's fees from either Danneman or the Board.

## I

On June 12, 1986, appellant Johnson, a registered voter in the District of Columbia, on his own behalf and on behalf of the Bottle Bill Initiative Campaign, filed with the Board a proposed initiative to enact a bottle deposit and refund law.[1] At a hearing in early July, the Board ruled that Johnson's proposal was a proper subject for an initiative. *See* D.C. Code § 1–1320(b)(1) (1987). The Board then numbered the measure "Initiative 28," formulated a short title for it, "The Beverage Container Refund Act of 1986," and prepared a summary statement of its contents pursuant to D.C. Code § 1–1320(c) (1987).

Soon thereafter the Board held a public hearing to decide whether to adopt formally the short title, summary statement, and legislative form for Initiative 28. Attorneys for the Clean Capital City Committee, a political committee supported by members of the beverage industry, were present at the hearing and offered several objections to the wording of the proposed statement. The Board considered these objections and modified the language slightly. At the close of the hearing, the Board approved the modified summary statement and short title as "true and impartial" in compliance with D.C. Code §§ 1–1320(c)(1) and 1–286 (1987).

Appellee Danneman, a registered voter, filed a timely petition for review in the Superior Court under D.C. Code § 1–1320(e)(1) (1987).[2] The petition named the Board as respondent and challenged the Board's formulation of the summary statement and short title. Specifically, Danneman argued that the statement and title should include the word "mandatory" to inform the voters of the burdens which the initiative would place on retailers; that the statement did not include the fact that violation of the initiative, once it became law, would be a misdemeanor; that the use of the terms "redemption services" and "redemption center" was confusing; and that the short title did not disclose that the measure also banned the sale of beverage cans with detachable pull tabs.

The proposers of the initiative (appellants) filed a motion to intervene on the side of the Board and a motion to expedite the case. Danneman opposed only the second motion, and the Board opposed neither. Both motions were granted. Appellants also moved for summary judgment with respect to the changes sought by Danneman. Meanwhile, in response to Danneman's petition, the Board reformulated its short title and summary statement to meet some of his objections. The parties also worked out an agreement to revise two

---

1. Any registered voter may propose an initiative measure to be submitted to the electorate of the District of Columbia. *See* D.C. Code § 1–1320(a)(1) (1987).

2. D.C. Code § 1–1320(e) (1987) provides in pertinent part:

(1) If any registered qualified elector of the District of Columbia objects to the summary statement, short title or legislative form of the initiative or referendum measure formulated by the Board pursuant to subsection (c) of this section, that person may seek review in the Superior Court of the District of Columbia within ten calendar days from the date such person receives such summary statement, short title and legislative form stating his or her objections and requesting appropriate changes. The Superior Court of the District of Columbia shall expedite the consideration of the matter.

\* \* \* \* \* \*

(3) Should the Superior Court of the District of Columbia hold in favor of the proposer, it may award court costs and reasonable attorney's fees to the proposer.

Paragraph (1) was amended in 1988. *See* D.C. Code § 1–1320(e)(1) (1988 Supp.). The amendment is minor, however, and is not relevant here, since all of the pertinent events in this case occurred before the amendment took effect. We shall therefore cite the pre–1988 version of the statute throughout this opinion.

paragraphs of the Board's rewritten summary statement.

Danneman, however, continued to contest the Board's statement and title, particularly urging that the word "mandatory" be included in both. He filed a cross-motion for summary judgment, to which appellants responded, defending the Board's reformulated short title and summary statement against Danneman's challenges. Appellants also sought minor modifications of the short title (the removal of one word) and the summary statement (the replacement of one word with another). The Board did not file its own motion for summary judgment or any memorandum in support of any of the motions that had been filed, taking the position that it was and must remain an impartial arbiter in the dispute. The trial court, after a hearing, granted summary judgment to appellants on condition that they withdraw their proposed changes (which they did), denied Danneman's motion for summary judgment, and dismissed his petition for review.

About six weeks later, appellants filed a motion for $11,625.25 in attorney's fees and $252.17 in costs under D.C. Code § 1–1320(e)(3) (1987).[3] They specifically asked that either Danneman or the Board, or both, be ordered to pay these amounts. Both Danneman and the Board opposed the motion, and the court denied it without explanation in a one-sentence order. This appeal followed.[4]

## II

"The general, or American rule, is that in the absence of statutory authority the prevailing party may not recover attorney's fees." *Andrews v. District of Columbia,* 443 A.2d 566, 568 (D.C.) (citations omitted), *cert. denied,* 459 U.S. 909, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982); *accord, Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 245, 95 S.Ct. 1612, 1615, 44 L.Ed.2d 141 (1975); *In re Antioch University,* 482 A.2d 133, 135–136 (D.C.1984); *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979). When statutory authority for a fee award exists, however, this court generally defers to the broad discretion of the trial judge in deciding whether to make such an award and in calculating its amount. *District of Columbia v. Hunt,* 520 A.2d 300, 304 (D.C.1987); *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986).

D.C. Code § 1–1320(e)(3) is such a statutory exception to the American rule; it expressly authorizes an award of attorney's fees "to the proposer" of an initiative, in the trial court's discretion, if the court "hold[s] in favor of the proposer." See note 2, *supra.*[5] In this case, however, before we may decide whether the court abused its discretion in denying appellants' request, we must first determine whether the statute authorizes an award of attorney's fees to a proposer who intervenes in a court proceeding on the side of the Board. After examining the statutory language and the relevant legislative history, we conclude that it does not.

The parallel rights of initiative and referendum were legislatively granted to the voters of the District of Columbia in 1978. *See* D.C. Code §§ 1–281 through 1–287 (1987). Detailed procedures for conducting initiatives and referenda were enacted a year later by the District of Columbia Council. D.C. Code § 1–1320 (1987).[6] To

---

3. See note 2, *supra.*

4. Initiative 28 was finally put before the voters at a general election in November 1987, following extensive media campaigns by both its supporters and its opponents. It was decisively defeated.

5. As originally enacted, section 1–1320(e)(3) made mandatory an award of attorney's fees to proposers who successfully sue the Board to accept their proposed initiatives. D.C. Code § 1–1320(e)(3) (1981) (court "shall award" costs and attorney's fees). In a 1982 amendment,

however, "shall" was changed to "may," thereby giving the court discretion either to grant or to deny a request for attorney's fees. That this was the intent of the legislature is clear from the legislative history. *See* Council of the District of Columbia, Report on Bill 4–271, at 3 (October 21, 1981) (hereafter "Committee Report").

6. The right of initiative specifically does not extend to "laws appropriating funds." D.C. Code § 1–281 (1987). *See generally District of Columbia Board of Elections & Ethics v. District of Columbia,* 520 A.2d 671 (D.C.1986); *District of Columbia Board of Elections & Ethics v.*

ensure that the initiative process will be employed fairly and correctly, the law empowers the Board to prepare a short title and summary which "accurately reflects [*sic*] the intent and meaning of the proposed ... initiative." D.C. Code § 1–286 (1987). The summary statement must be "true and impartial" and may not "intentionally create prejudice for or against the measure." D.C. Code § 1–1320(c)(1) (1987). The statutory scheme places ultimate responsibility for the initiative process on the Board of Elections and Ethics, but it also encourages voters to become actively involved in all stages of the process. Hence any registered voter may submit a proposed initiative to the Board, D.C. Code § 1–1320(a)(1) (1987), or challenge the wording of the summary statement or the short title as formulated by the Board. D.C. Code § 1–1320(e)(1) (1987).

Originally, only the proposer of an initiative could challenge the Board's summary statement and short title in the Superior Court. D.C. Code § 1–1320(e)(1) (1981) provided:

> If *the proposer* objects to the summary statement, short title or legislative form of the initiative or referendum measure formulated by the Board of Elections and Ethics pursuant to subsection (c) of this section, *that person* may seek review in the Superior Court.... [Emphasis added.]

In 1982 the first sentence of section 1–1320(e)(1) was amended by changing "the proposer" to "any registered qualified elector," thereby allowing any voter to challenge the Board's formulation of a summary statement or short title. D.C. Code § 1–1320(e)(1) (1987); see note 2, *supra*. The provision entitling victorious proposers to fees, however, was left untouched, except that a fee award was made discretionary rather than mandatory. D.C. Code § 1–1320(e)(3) (1987); *see* Committee Report, *supra* note 5, at 5–6.

Thus the current version of the statute envisions two types of challenges: the "proposer's appeal," in which proposers may challenge the Board's formulation of short titles and summary statements for the measures they propose, and may receive attorney's fees if they win; and the "elector's appeal," in which registered voters may challenge the summary statements and short titles, but are not eligible for a discretionary award of attorney's fees.

Despite the fact that the statute was not amended to allow fee awards in elector's appeal situations, appellants maintain that section 1–1320(e)(3) explicitly makes victorious proposers eligible for fee awards in all court proceedings under section 1–1320(e)(1), including those who have sided with the Board to defend against an elector's appeal. Citing the policy behind the initiative statute—to maintain the integrity of the initiative process—appellants contend that their defense of a proper Board formulation should be rewarded in the same manner as a successful attack on an improper Board formulation. Appellants also claim that they may receive fees either from their co-respondent, the Board, or from an unsuccessful challenging party, in this case Danneman. Given the express language and legislative history of the statute, we reject both arguments.

Our local initiative statute has rarely been subjected to judicial scrutiny. The United States District Court for the District of Columbia has stated the general principle that "[i]nitiative legislation should be liberally construed to extend its operation rather than to reduce it." *Citizens Against Legalized Gambling v. District of Columbia Board of Elections & Ethics*, 501 F.Supp. 786, 789 (D.D.C.1980) (citations omitted). More significantly, this court has said, when specifically examining what is now section 1–1320(e)(3), that "[i]n the absence of any interpretive guidance from the Council, we must construe [the statutory language] in a manner [that does not defy] ... common sense...." *District of Columbia Board of Elections & Ethics v. Jones*, 495 A.2d 752, 753 (D.C.1985).

A common-sense reading of the amended section 1–1320(e) undercuts appellants' ar-

gument that all victorious proposers, however situated, are entitled to attorney's fees. As originally enacted in 1979, subsection (e)(3) allowed fees only to successful challengers in proposer's appeals. Although the language of subsection (e)(1) was broadened in 1982 to allow any qualified elector to challenge the Board, the fee provision in subsection (e)(3) was not similarly broadened to grant fees to victorious challengers, or indeed to anybody, in elector's appeals. There is simply no way to read subsection (e)(3) so as to allow fee awards to successful respondents in elector's appeals, whether they be proposers or someone else.[7]

As we discovered in the *Jones* case, *supra,* the legislative history is of little help in construing the fee statute. *See* 495 A.2d at 753. It does not appear from any of the legislative materials that the notion of attorney's fees in elector's appeals was ever considered. Yet the legislative history is significant here for what it does not say. The Committee Report on the 1982 amendment certainly did not envision the situation in the present case, in which a proposer seeks fees as a victorious intervenor on the side of the Board. The report speaks only of changing the fee award from mandatory to discretionary. Committee Report, *supra* note 5, at 3, 6. If the Council had intended to broaden the scope of the statute by extending eligibility for fee awards to a new class of parties, we would expect such an intent to be reflected at least in the legislative history, and most likely in the statutory language as well. Finding no such intent expressed in either place, we decline to read it into the statute.

We similarly reject appellants' contention that attorney's fees may be assessed against a losing challenger. Although section 1–1320(e)(3) makes no mention of the source of fees for an award in a proposer's appeal, logic would dictate that the fees must come from the Board, since the Board would normally be the only other party to a court proceeding under section 1–1320(e)(1). The legislative history of the original, unamended statute supports this construction:

> Success by the proposer in [the Superior Court] shall subject *the Board* to reasonable court costs and attorneys fees.

Council of the District of Columbia, Report on Bill 3–2, at 3 (January 31, 1979) (emphasis added). When subsection (a)(1) was amended to allow challenges from voters as well as proposers, the legislative history was totally silent as to whether fees could be assessed against other parties. Again, if the Council had intended to enlarge the number of parties liable for fees, one would expect some indication to that effect in the legislative history, since there is none in the statute itself. From the failure of the Council even to mention the idea, we conclude that it had no such intention.

Thus we interpret the legislative silence as barring a successful intervenor/respondent from recovering fees from a losing challenger. Both appellants and appellee Danneman make arguments based on their respective views of public policy, but neither of their arguments outweighs the other. Appellants claim that fee awards are essential to promote the defense of proper Board-formulated short titles and statements, especially in view of the neutral litigation posture assumed by the Board. Danneman counters that a fee award against a losing challenger would make others hesitant to challenge the Board, thus subverting the primary purpose of ensuring the integrity of the initiative process. The one policy that should prevail, in our view, is the long established American rule: that, in the absence of clear statutory authority, the prevailing party is not entitled to an award of attorney's fees, regardless of its source. There is certainly no clear authority for such an award in this

---

7. Were we to hold otherwise, we might actually discourage voters from bringing a challenge to the Board under subsection (e)(1) by raising the specter of liability for attorney's fees if their challenge should not be successful. This would be contrary to the purpose of the 1982 amendment, which was to enable any voter to seek

case.[8]

We hold that appellants, as a matter of law, are not entitled to attorney's fees. The trial court's order to that effect is AFFIRMED.

judicial review of Board decisions relating to initiatives.

**8.** In two civil rights cases cited by appellants, *Donnell v. United States,* 220 U.S.App.D.C. 405, 682 F.2d 240 (1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983), and *Baker v. City of Detroit,* 504 F.Supp. 841 (E.D.Mich. 1980), *aff'd,* 704 F.2d 878, *vacated on other grounds on rehearing,* 712 F.2d 222 (6th Cir. 1983), intervenors who joined on the side of government defendants were awarded attorney's fees. These cases are of no help to appel-

lants, because in each of them the court found clear support in the legislative history of the pertinent civil rights statutes for such awards. *Donnell, supra,* 220 U.S.App.D.C. at 411, 682 F.2d at 246; *Baker, supra,* 504 F.Supp. at 850. No comparable legislative history exists for D.C. Code § 1–1320(e)(3). Indeed, the Committee Report accompanying the 1982 amendments noted that fee awards would become discretionary rather than mandatory, which would make them less likely to be granted. *See* Committee Report, *supra* note 5, at 3.