**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Appellant,**

v.

**Phinis JONES, Appellee.**

**GREATER WASHINGTON BOARD OF TRADE, Appellant,**

v.

**Phinis JONES, Appellee.**

**DISTRICT OF COLUMBIA, Appellant,**

v.

**Phinis JONES, Appellee.**

**Nos. 84–105, 84–109 and 84–187.**

District of Columbia Court of Appeals.

Argued April 19, 1984.

Decided August 22, 1984.*

sion, we are guided by a similar order imposed by this court in *In re Stanton,* 470 A.2d 281 (D.C.1983).

* On April 24, 1984, because of the immediacy of the issue presented, we entered an order deciding this case with opinion to follow. This opinion was released in mimeographed form on August 22, 1984.

William H. Lewis, Washington, D.C., with whom Cecily E. Collier, Washington, D.C., was on the brief, for appellant District of Columbia Board of Elections and Ethics.

James M. Christian, Washington, D.C., with whom Jeffrey L. Berger, Washington, D.C., was on the brief, for appellant Greater Washington Board of Trade.

Lutz Alexander Prager, Asst. Corporation Counsel, Washington, D.C., with whom Inez Smith Reid, Corporation Counsel, John H. Suda, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on the brief, for appellant District of Columbia.

Matthew S. Watson, Washington, D.C., for appellee Phinis Jones.

Before NEWMAN, Chief Judge, and MACK and TERRY, Associate Judges.

NEWMAN, Chief Judge:

The District of Columbia Board of Elections and Ethics appeals the denial of its motion for summary judgment, and the grant of summary judgment to appellee Phinis Jones. Jones' action in the nature of mandamus requested the Superior Court to order the Board of Elections and Ethics to accept his proposed initiative, the District of Columbia Unemployment Compensation Initiative of 1984, as a proper subject of the initiative process pursuant to § 1–1320(b) of the Initiative, Referendum, and Recall Procedures Act, D.C. Code §§ 1–1301, –1326 (1984 Supp.) (hereinafter Initiative Procedures Act). The District of Columbia government and the Greater Washington Board of Trade appeal the order denying their intervention and seek to challenge the trial court order.

Jones submitted the initiative to the Board of Elections, in accordance with the Initiative Procedures Act, on August 30, 1983. The initiative would submit to the electors of the District of Columbia the question of whether the District of Columbia Unemployment Compensation Act, as amended, D.C. Code §§ 46–101–119 (1984 Supp.), should be further amended to restore many of the benefits reduced by previous amendment.[1]

Jones and the Board of Trade filed memoranda with the Board of Elections respectively supporting and opposing the acceptance of the initiative, and on October 3, 1983, the Board of Elections heard oral argument.

On October 12, 1983, the Board of Elections issued its opinion rejecting the initiative on the ground that it "negates and/or limits a budget act and would require an affirmative [budget] act of the Council [of the District of Columbia]."

---

**1.** The initiative would allow, *inter alia,* for automatic increases in unemployment compensation contributions paid by private District employers, automatic increases in employment compensation benefits to unemployed private employees and unemployed District government employees, 13 weeks of additional or extended benefits if the rate of unemployment in the District exceeds certain levels, and unemployment compensation benefits, after a 6–12 week waiting period, for employees who voluntarily resign without good cause or who are discharged for misconduct.

Jones filed an action in the nature of mandamus in Superior Court pursuant to D.C. Code § 1–1320(b)(3) (1984 Supp.), requesting that the court determine the initiative to be appropriate and order the Board of Elections to accept it.

Jones and the Board of Elections filed cross motions for summary judgment. Both the Board of Trade and the District of Columbia government sought intervention and filed motions to dismiss. The court denied the motions to intervene, but permitted the movants to participate as *amici curiae.*

On February 1, 1984, the trial court granted Jones' motion for summary judgment and declared the initiative to be a proper subject of the initiative process. This appeal followed.

■ We conclude that the District of Columbia Unemployment Compensation Initiative of 1984 is not a proper subject of the initiative process pursuant to the Initiative Procedures Act, and therefore we reverse the trial court order. We also find that the trial court erred in denying intervention as of right to the District of Columbia government, and that the court abused its discretion by not allowing permissive intervention by the Greater Washington Board of Trade.

I.

The Home Rule Act[2] originally did not contain the right of initiative. This right was granted the electorate in the Charter Amendments Act, D.C. Code §§ 1–281–295 (1981). In defining the scope of the right of initiative, the Act expressly excludes laws which appropriate funds:

> The term initiative means the process by which the electors of the District of Columbia may propose laws (*except laws appropriating funds*) and present such proposed laws directly to the registered

qualified electors of the District of Columbia for their approval or disapproval. D.C. Code §§ 1–281(a) & –1302(10) (1981) (emphasis added).

The implementing legislation for the Charter Amendment Act, the Initiative Procedures Act, became effective in 1979. The Initiative Procedures Act includes a provision (known as the Dixon Amendment), reflective of the "laws appropriating funds" exception of the Charter Amendments Act, which provides that the Board must refuse to accept any measure that is not a "proper subject of initiative" because (among other reasons) "the measure presented would negate or limit an act of the Council of the District of Columbia pursuant to § 47–304," which governs the budgetary process. D.C. Code § 1–1320(b)(1)(D) (1984 Supp.).

Appellant Board of Elections and Ethics contends that the proposed initiative is not a proper subject of the initiative process because it would violate the "laws appropriating funds" exception and would negate or limit a budget act of the Council. This argument can be understood by examining the local and federal unemployment compensation systems.

The unemployment compensation program in the District of Columbia is administered in accordance with the District of Columbia Unemployment Compensation Act, D.C. Code §§ 46–101–119. Each private District employer, except certain nonprofit organizations, pays unemployment compensation contributions at specified rates. D.C. Code § 46–103 (1981 & 1984 Supp.). The District of Columbia government and certain nonprofit organizations pay amounts equal to the regular unemployment benefits paid to their former employees. D.C. Code § 46–103(f) (1981). The District funds these payments through direct appropriations from the Congress. D.C. Code § 46–104 (1981). The contributions and payments by the District are

2. District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (codified as amended in scattered sections of D.C.Code Supp.1978) (commonly known as the Home Rule Act).

"paid to and controlled by" the District Office of Unemployment Compensation in the Department of Employment Services, and the Office deposits all contributions into a District Unemployment Fund [3] maintained by the United States Treasury. D.C. Code §§ 46–102, –105 (1981 & 1984 Supp.). All benefits are paid from the Benefit Account of the District Unemployment Fund. D.C. Code § 46–108(a) (1981). The level of these benefits is determined by local legislation. D.C. Code § 46–108 (1981 & 1984 Supp.).

In addition to the local program, the federal government operates a federally funded program, made available to the District and the states on a voluntary basis, which offers to absorb many of the costs of the local program. When the District of Columbia is certified by the Secretary of Labor as being in compliance with the federal standards set by the program, the Office of Unemployment Compensation may "requisition" loans from the U.S. Treasury through the Unemployment Trust Fund Account of the District Unemployment Fund to cover shortfalls in the Benefits Account. 42 U.S.C. § 1321 (1982); 26 U.S.C.A. § 3304 (West Supp.1984); D.C. Code § 46–109 (1981). The District must repay such loans with interest. 42 U.S.C. § 1322 (1982), *as amended* 42 U.S.C.A. § 1322 (West Supp.1984). This interest cannot be paid directly or indirectly from the District Unemployment Fund. 42 U.S.C. § 1322(b)(5) (1982). The District repays the interest from funds requested by the Council as part of its budget request to Congress, which appropriates funds for interest on short-term borrowing. In addition to providing loans, the federal program absorbs the major costs of the administration of the local program. 42 U.S.C. §§ 501–503 (1982). The administrative costs of this federal program are supported by a Federal Unemployment Tax paid by employers.

26 U.S.C. §§ 3301–3311 (1982), *as amended* 26 U.S.C.A. §§ 3301–3311 (West Supp. 1984).[4]

On March 15, 1983, the Council passed the "District of Columbia Unemployment Compensation Act Amendments Act of 1983," 30 D.C.Reg. 1371 & 2429 (1983) [hereinafter Amendments Act]. This Amendments Act was designed to protect the solvency of the District's Unemployment Trust Fund by preventing the growth of the District's debt through continuing requisitions of costly loans from the U.S. Treasury. Council of the District of Columbia, Report on Bill 5–57 (1983). Among the changes effected by the Amendments Act were increased employment taxes for local employers, a reduced maximum duration of benefits, and a durational disqualification for certain types of employee discharges.

The initiative proposed by Jones is designed to restore many of the benefits cut by the Amendments Act. The right of initiative, however, does not extend to the subject matter of this measure. The proposed initiative is precluded by the "laws appropriating funds" exception of the Charter Amendments. D.C.Code § 1–281(a) (1981).

This court has previously recognized that due to the "unique features of our home rule process, [the] 'laws appropriating funds' exception is ambiguous on its face." *Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics*, 441 A.2d 889, 911 (D.C. 1981) (en banc). In the *Convention Center* case, this court looked to the legislative history of the exception for guidance as to its construction. We concluded that

the "laws appropriating funds" exception prevents the electorate from using the initiative to (1) adopt a budget request act or *make some other affirmative effort to appropriate funds,* or to (2) block

---

**3.** The District Unemployment Fund consists of three separate accounts: a Clearing Account, an Unemployment Trust Fund Account and a Benefit Account.

**4.** The Internal Revenue Service provides a tax credit to District employers based on their contributions to the District's Fund.

the expenditure of funds requested or appropriated as of the effective date of the initiative act.

*Convention Center, supra,* 441 A.2d at 914 (emphasis added). While we noted two major and sometimes conflicting concerns of the Charter Amendments which must be weighed in construing the exception—responsible fiscal management and the electors' right of initiative—we also recognized that the Council was particularly concerned that the electorate not use the initiative to launch the appropriations process. *Id.* at 912.

■ In determining that the initiative here in issue is not a proper subject of the initiative process, we look to the fact that the increased funding requirements of the initiative provisions would necessitate additional borrowing from the U.S. Treasury and additional appropriation requests from the Council to Congress. Where shortfalls in the unemployment compensation fund occurred, the District would have to borrow from the U.S. Treasury, thereby incurring substantial interest obligations, or request additional appropriations from Congress to cover the deficits. This would be true even where shortfalls in the unemployment compensation fund were due to insufficient contributions by private D.C. employers. Additionally, the fact that the proposed initiative authorizes an increase in the level of benefits to former D.C. government employees is irreconcilable with the initiative process ban on "laws appropriating funds." We see no distinction between the effect on fiscal planning of this provision, which calls for automatic increases in unemployment benefits, and that of a provision which would authorize an automatic raise for all D.C. government employees. Either would compel a prohibited interference with the management of the financial affairs of the District. These provisions of the proposed

initiative, which would force the District government into making interest payments and seeking additional appropriations for employer contributions to the unemployment compensation fund, constitute an affirmative effort to appropriate funds—action specifically excluded from the right of initiative by the "laws appropriating funds" exception. *Convention Center, supra,* 441 A.2d at 913–14.

We have held that the Dixon Amendment is consistent with the Charter Amendment limitations on the initiative right. *Id.* Therefore, the Board of Elections and Ethics properly relied on that provision in rejecting the proposed initiative.

## II.

■ Because the District government has a vital interest in continued freedom from interference in the management of its financial affairs, the trial court erred in denying its motion to intervene as a matter of right. Super.Ct.Civ.R. 24(a).[5] A determination that the initiative is proper would undoubtedly impair the District government's ability to exercise control over its fiscal affairs. *Compare Vale Properties v. Canterbury Tales, Inc.,* 431 A.2d 11, 14 (D.C.1981). It is also apparent that the District's interest would not be adequately represented by the Board of Elections and Ethics. While the Board of Elections maintained that the initiative was improper, its arguments were designed only to protect the integrity and insure the legality of the elections process. The Board of Elections had no aim to protect the fiscal prerogatives of the District. The mere fact that the Board of Elections and the District sought the same result should not have

5. Super.Ct.Civ.R. 24 is identical in all relevant respects to Fed.R.Civ.P. 24. Section (a) provides:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

been outcome determinative of the District's ability to intervene.[6]

Finally, we conclude that the trial court abused its discretion by denying permissive intervention to the Greater Washington Board of Trade. Super.Ct.Civ.R. 24(b).[7] *See generally Johnson v. United States,* 398 A.2d 354 (D.C.1979). The Board of Trade, an association whose membership includes numerous private employers doing business in the District, has a substantial financial interest in the outcome of the litigation. If the initiative were ruled proper and passed by the electorate, Board of Trade members would be required to pay increased unemployment contributions. *See Calvin-Humphrey v. District of Columbia,* 340 A.2d 795, 799 (D.C.1975). The operation of *stare decisis* as to the trial court's ruling would impair future challenges to the initiative by the Board of Trade. Additionally, its interests would not be adequately represented by the Board of Elections. Finally, intervention by the Board of Trade would not have unduly delayed or prejudiced the adjudication of the rights of the original parties; the record indicates that the Board was prepared to proceed.

Accordingly, the motions for leave to intervene should have been granted.

*Reversed.*

---

**6.** If the Board of Elections had ruled the initiative to be proper and the Board of Trade had appealed the ruling in the trial court, no one could doubt the right of the District to intervene. The right of intervention must not be determined by the vagaries of the particular ruling of the Board of Elections.

**7.** Super.Ct.Civ.R. 24(b):

Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common ....