Michael B. DORSEY, Appellant,

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS & ETHICS, Appellee.

No. 93–CV–47.

District of Columbia Court of Appeals.

Argued Sept. 21, 1994.

Decided Oct. 11, 1994.

Michael B. Dorsey, pro se.

William H. Lewis, with whom Alice P. McCrory was on the brief, for appellee.

Before FERREN, TERRY, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This appeal from a grant of summary judgment in favor of the District of Columbia Board of Elections and Ethics (the Board) presents the question whether a proposed ballot initiative, D.C.Code § 1–1320 (1992), that would prohibit the District government from "booting" and thereby impounding motor vehicles as a fine-collection measure and would also require an "amnesty ... from time-to-time" from increased penalties for late payment of traffic fines is a proper subject of initiative under governing law. We hold that it is not, and sustain the grant of summary judgment.

## I.

Appellant's proposed initiative, submitted on April 19, 1992, provides as follows:

> BE IT ENACTED as a law by the people of the District of Columbia, that:
>
> Sec. 1. Vehicles registered in the District shall be exempt from booting;
>
> Sec. 2. An amnesty program shall be executed from time-to-time, permitting payment of original collateral of parking and moving violations. This initiative amends the Traffic Adjudication Act of 1978.

The measure contains a severability provision and an effective date (if adopted) of January 1, 1993.

The Board refused to accept the measure on two grounds: it would negate or limit a budget act of the Council of the District of Columbia, contrary to D.C.Code § 1–1320(b)(1)(D), and it would amount to a "law appropriating funds," in violation of D.C.Code §§ 1–1320(b)(1) and 1–281(a). Appellant then brought this suit in Superior Court, § 1–1320(b)(3), seeking to compel the Board to accept the initiative for placement on the ballot. The Board moved for summary judgment, asserting as an undisputed fact that "the [D.C.] Council utilizes fiscal assumptions in preparing the Budget Request Act, including ... revenues generated from traffic fines." Attached to the summary judgment motion was a letter to the Board from Councilmember Thomas pointing out that the Council annually "relies on the revenue projected from civil fines for parking infractions, including revenues from booting of vehicles registered in the District and revenues from late payment, in their allocation of District government revenues in the adoption of the budget." The letter specifically noted that "the effective date under the proposed initiative is January 1, 1993 and that the Council ... has already passed the Fiscal Year 1993 Budget on an emergency basis." A second letter from Councilmember Nathanson asserted that "[e]xempting vehicles registered in the District from having to pay the $50 booting fee and $75 if the booted vehicle is towed would have a negative fiscal impact on the District," and that "[a]ll monies derived from parking and moving violations are significant elements of the District's budget." The trial court granted summary judgment to the Board.

## II.

D.C.Code § 1–1320(b)(1)(D) prohibits any initiative or referendum that "would negate or limit an act of the Council of the District of Columbia pursuant to [D.C.Code] § 47–304 [1990]." The "act" referred to is a Budget Request Act passed by the Council and submitted to the President for transmission to the Congress pursuant to § 47–304. *See Hessey v. District of Columbia Bd. of Elections & Ethics,* 601 A.2d 3, 9, 15 (D.C.1991) (en banc). Appellant does not dispute on appeal, and must be assumed to have conceded in the trial court,[1] the Board's representation that the Council's annual revenue projections incorporated into a Budget Request Act include penalties for late payment of traffic fines (the sort that would be forgiven under appellant's periodic "amnesty" scheme) and fees for booting and associated

---

1. Appellant contends that he was never served with the Board's motion for summary judgment and supporting documents. As the Board points out, however, even if this were true, the trial court held a hearing on the motion at which appellant was present and could assert any issues of material fact requiring a trial. Since appellant has not furnished us with a transcript of that hearing, *see Cobb v. Standard Drug Co.,* 453 A.2d 110, 111–12 (D.C.1982), we have no way of determining what issues if any appellant asserted in opposition to summary judgment.

towing fees, which would no longer be available under the initiative. Thus, by purporting to take effect on January 1, 1993, the proposed initiative would have "negate[d]" the Budget Request Act for that year to the extent the act was based on those projected revenues. Moreover, it would have the same effect in future years since, as the Councilmembers asserted below, these revenues are included in the budget act for each fiscal year.[2] On this ground alone it was defective.

More fundamentally, D.C.Code § 1–281(a) prohibits use of the initiative process to propose "laws appropriating funds." In *Hessey, supra,* we interpreted this limitation very broadly, holding that it "extend[s] . . . to the full measure of the Council's role in the District's budget process. . . ." *Id.* at 20. We explained that "the word 'appropriations,' when used in connection with the functions of the Mayor and the Council in the District's budget process, refers to the discretionary process by which revenues *are identified* and allocated among competing programs and activities." *Id.* at 19 (emphasis added). As part of the annual budgetary process, for example, the Mayor must submit to the Council "a report on all available revenues," and the Mayor and Council in turn must "identify expenses and revenues, and . . . propose a balanced budget for Congressional approval. . . ." *Id.* at 10. Through the "laws appropriating funds" limitation, Congress and the Council ensured that these "matters relating to the local budget process would remain within the control of the Mayor and Council, and that initiatives [would] not create deficits or interfere with the locally elected officials' decisions about how District government revenues should be spent." *Id.* at 15.

However modestly, appellant's proposed initiative "would intrude upon the discretion of the Council to allocate District government revenues in the budget process," *id.* at 19, in the manner forbidden by § 1–281(a). In any year in which they operated, the amnesty and anti-impoundment provisions would make it virtually impossible for the Council to identify and allocate revenues from penalties for late payment of traffic fines. That these funds are only a tiny part of the District's annual revenue projections is beside the point; the electorate may no more eliminate them by initiative than it could abolish or lower the sales tax or local income tax— matters integral to the "power of the purse" which Congress and the Council reserved exclusively to the elected government. *Id.* at 15, 19; *see id.* at 15 n. 26 (legislature's decision to leave "power of the purse" to elected officials reflected similarly in limitations on referendum right, which may not be used to suspend acts "levying taxes," § 1–281(b)). Because appellant's initiative would affect or "relate to," *id.* at 12–13, 15, the budget process in the broad manner defined by *Hessey,* it constitutes a law appropriating funds prohibited by § 1–281(a).

*Affirmed.*

---

**2.** Appellant conjectures that periodic amnesties would actually increase the payment of traffic fines and thus not diminish available revenues. The contrary representation of the Councilmembers that the initiative would have a negative fiscal impact was sufficient to refute this speculative hypothesis.