**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS and District of Columbia Campaign for Treatment, Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 03–CV–549, 03–CV–560.**

District of Columbia Court of Appeals.

Argued May 6, 2004.

Decided Jan. 27, 2005.

Terri D. Stroud, with whom Kenneth J. McGhie, was on the brief, for appellant District of Columbia Board of Elections and Ethics.

Julie M. Carpenter, with whom Jared O. Freedman, Washington, DC, was on the brief, for appellant District of Columbia Campaign for Treatment.

Bennett Rushkoff, Senior Counsel, with whom Robert J. Spagnoletti, Corporation Counsel at the time, and Edward E. Schwab, Acting Deputy Corporation Counsel at the time, were on the brief, for appellee.*

Before WAGNER, Chief Judge, REID, Associate Judge, and STEADMAN, Senior Judge.**

STEADMAN, Senior Judge:

In November 2002, the voters of the District of Columbia approved and adopted the "Treatment Instead of Jail for Certain Non–Violent Drug Offenders Initiative of 2002," which provided for substance abuse treatment as an alternative to incarceration for certain drug offenses. The District of Columbia brought suit to invalidate the initiative on the ground that it fell within the exclusion from the initiative process of "laws appropriating funds." D.C.Code § 1–204.101(a) (2001); *see also* D.C.Code § 1–1001.16(b)(1). The trial court granted summary judgment in favor of the District. The parties agree that there are no genuine issues of material fact in dispute. Thus, the sole legal question before us is whether the Treatment Instead of Jail Initiative is a "law[ ] appropriating funds" and therefore was not lawfully adopted through the initiative process. We affirm.

### I. Facts

#### A.

On February 14, 2002, the District of Columbia Campaign for Treatment ("the Campaign") presented to the District of Columbia Board of Elections and Ethics ("the Board") the "Treatment Instead of Jail for Certain Non–Violent Drug Offenders Initiative." The original initiative included a section providing for the establishment of "a Substance Abuse Treatment Fund" for the purposes of carrying out the Act and to be "comprised of general revenue funds appropriated by a line item in the budget." The section also directed how such funds were to be spent. In response to a request by the Board, both the District of Columbia Council and the District of Columbia Office of Corporation Counsel ("Corporation Counsel") opined that the original initiative interfered with

---

* After oral argument in this case, the Mayor of the District of Columbia issued an order changing the name of the Office of the Corporation Counsel to the Office of the Attorney General for the District of Columbia. *See* Mayor's Order 2004–92 (May 26, 2004), 51 D.C. Register 6052.

** Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on October 18, 2004.

the Council's "appropriation power to identify revenues and allocate them" and therefore violated "the appropriation limitation on initiatives" under D.C.Code § 1–204.101(a). On March 8, 2002, the Board rejected the original initiative, determining that it was a law appropriating funds.

Subsequently, the Campaign made four major revisions to the initiative, including: (1) the removal of the Substance Abuse Treatment Fund; (2) the addition of subsection 5(f), which provided that no one eligible for treatment under the initiative could be incarcerated unless that person had been provided an opportunity for treatment and either had refused or had been removed from the program; (3) the alteration of the effective date to the next fiscal year; and (4) the addition of language subjecting narcotics replacement therapy in subsection 6(d) to the appropriation of funds.

The Board again sought the advice of the District of Columbia Council and Corporation Counsel as to whether the revised Treatment Instead of Jail Initiative was a proper subject for the initiative process. On April 3, 2002, the Board accepted the initiative. On April 5, 2002, Corporation Counsel opined that the revised initiative would force the Council to "seek appropriations to pay for treatment" and " 'intrude upon the discretion of Council to allocate the District government revenues in the budget process.' " Quoting *Hessey v. District of Columbia Bd. of Elections & Ethics,* 601 A.2d 3, 20 (D.C.1991) (en banc). Corporation Counsel interpreted the initiative to require that substance abuse treatment be provided to eligible offenders and asserted that the initiative's repeated use

of the term "shall" created a duty upon the District to carry out its provisions.

On July 8, 2002, the Campaign submitted to the Board a petition supporting the revised initiative with 45,801 signatures. The Board certified the initiative for the ballot. On September 20, 2002, the District filed a complaint for declaratory and injunctive relief against the Board, alleging the Board erred in accepting the initiative because it is a law appropriating funds. On October 10, 2002, the trial court granted the Campaign's request to intervene in the action before the court. On election day, November 5, 2002, the initiative was presented to the voters, with a summary statement reading:

This initiative, if passed, will:

- Provide substance abuse treatment instead of conviction or imprisonment to eligible non-violent, first-or second-time defendants charged with illegal possession or use of drugs, except those classified as Schedule I drugs under the federal Controlled Substances Act (including marijuana);

- Provide a plan for rehabilitation to individuals accepted for substance abuse treatment;

- Provide for dismissal of legal proceedings for defendants upon successful completion of the treatment program.

This initiative establishes an office within the Department of Health to settle disputes regarding treatment. This initiative does not reduce penalties associated with any criminal offense.[1]

The Treatment Instead of Jail Initiative passed with 78% of the vote.

Three days later, on November 8, 2002, the District sought a temporary restrain-

---

1. The District states in its brief that the summary statement on the ballot did not include the words "first- or second-time." Because the ballot, as it was presented to the voters, is not in the record, we rely on the summary statement published in the D.C. Register. The difference between the two has no effect on this appeal.

ing order and preliminary injunction, enjoining the Board from certifying the vote. That request was denied. On November 27, 2002, the District, the Campaign and the Board each moved for summary judgment on the District's request for declaratory relief. On February 10, 2003, the trial court granted the District's motion for summary judgment and denied the motions of the Campaign and the Board. The trial court declared that the Treatment Instead of Jail Initiative was a law appropriating funds, was not proper subject matter for the initiative process, and was erroneously accepted by the Board for that process. The Board and the Campaign filed timely appeals.[2]

**B.**

Briefly put, the Treatment Instead of Jail Initiative provides a non-violent offender, who is charged with drug use or possession, the opportunity to seek substance abuse treatment as an alternative to incarceration. Under the initiative, once an eligible offender completes the court-

adopted drug rehabilitation program, the criminal charges against the offender will be dismissed and expunged from his or her official record.

Specifically, an offender who is charged with illegal possession or use of a controlled substance or with a drug-related probation or parole violation can commence procedures under the initiative by filing a request for substance abuse treatment with the Superior Court. § 24–751.05(a).[3] In response to such a request, the court must stay the criminal proceedings against the offender and, within 3 days, determine if the offender is eligible for treatment under the terms of the initiative. § 24–751.05(b), .06(a)–(c).[4] If the court finds the offender eligible, it must accept his request for treatment and order his release from custody. § 24–751.05(d). The court must then order that an assessment of the eligible offender be performed by a treatment professional, who will evaluate the offender's substance dependence and recommend a treatment plan to the court. § 24–751.05(e), .07(1).[5]

---

**2.** The initiative by its terms became effective on June 5, 2003, and the full text is codified in D.C.Code §§ 24–751.01–.13 (2004 Supp.). It may be cited as the "Treatment Instead of Jail for Certain Non–Violent Drug Offenders Initiative of 2002." § 24–751.01. Enforcement of the initiative has been effectively stayed pending appeal.

**3.** The provisions of the initiative are extremely detailed. We present here only a summary of the operation of the initiative sufficient to place the legal issue in understandable context.

**4.** The act is not available to persons who are charged with possession or use of any Schedule I substance under 21 U.S.C. § 801 or 812 (Schedule I substances most notably include: heroin, marijuana, hashish, LSD and peyote. *See* UELMEN & HADDOCK, DRUG ABUSE AND THE LAW SOURCEBOOK § 3.2 (2003).). § 24–751.06(c)(2). According to the Campaign, such substances were excluded from the initiative so as to avoid violating the D.C. Appropriations Act,

which bars the District from funding an initiative that seeks to legalize or reduce penalties associated with Schedule I substances. D.C. Appropriations Act, 1999, Pub.L. No. 105–277 § 171, 112 Stat. 2681 (1998). Nonetheless, such a person upon conviction shall, where appropriate, be provided with narcotics replacement therapy. § 24–751.06(d). As shall be discussed infra, this provision is made explicitly subject to proper funding by the District and Congress. *Id.* The act excludes entirely from its provision persons charged with possession or use of "any tetrahydrocannibinols derivative"; i.e., marijuana offenses.

**5.** In defining a treatment program as "a treatment and/or rehabilitation program, or set of programs designed to reduce or eliminate substance abuse dependency," the initiative states that, "[a] continuum of services *shall* be available..." § 24–751.04(8).

After the court reviews the plan and finds it complies with the initiative, the court must adopt the plan but may add reasonable conditions to the plan. § 24–751.07(2), .07(4). The court may request a revised plan if it finds the treatment professional's proposal unacceptable. § 24–751.07(2). An offender may seek modification of such plan if he believes it to be unsuitable, and treatment providers may seek modification of the plan under specific circumstances. *Id.*, § 24–751.08(b). Once the court has adopted a treatment plan for the eligible offender, the court must designate a treatment provider to administer the plan. § 24–751.07(3). The court then must order the offender to appear for treatment no later than 14 days after the determination of eligibility. § 24–751.07(9). This time may be extended up to 30 days for lack of space or other good cause. *Id.* The court can require an offender who is able to do so to pay for his treatment, however, only as long as the requirement is not so burdensome that treatment becomes inaccessible or that payment is punitive in nature. § 24–751.07(5).

An offender who refuses to consent to the terms of the treatment plan adopted by the court is deemed to have withdrawn his request for treatment and criminal proceedings may be initiated against him. § 24–751.07(7). An offender undergoing treatment who commits a criminal offense, violates a condition of his release, or violates a condition of his treatment plan, may be subject to a hearing, to the imposition of sanctions, to removal from treatment and to the reinitiation of the original criminal proceedings. § 24–751.09(a)–(e). An eligible offender may not be sentenced to incarceration unless he has been provided an opportunity for treatment and either has refused it or has been removed from

treatment in accordance with the initiative. § 24–751.05(f). Upon successful completion of treatment, the court must dismiss the stayed proceedings against the offender and expunge the charges from his official record. § 24–751.10(a), (b), (d). If treatment has not been successful despite the offender's participation for the designated time, the court may extend the period of treatment up to 18 months, dismiss the stayed proceedings and the treatment plan, or order additional supervision of the offender for up to 90 days. § 24–751.10(c).

## II. Analysis

■■■ "We review the grant or denial of a summary judgment motion *de novo.* Summary judgment is appropriate only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 858 (D.C.1999) (citation omitted). In this appeal, as already mentioned, the only issue is whether the movant, the District, was entitled to judgment as a matter of law.

### A.

District of Columbia law provides for an "initiative... process by which the electors of the District of Columbia may propose laws... and present such proposed laws directly to the registered qualified electors of the District of Columbia for their approval or disapproval." D.C.Code § 1–204.101(a) (2001). However, initiatives may not include "laws appropriating funds," *id.*, and the Board must reject those initiatives that "would negate or limit an act of the Council of the District of Columbia" in adopting the District's annual budget "pursuant to § 1–204.46." *Id.* § 1–1001.16(b)(1).[6]

6. The right of initiative, now codified as §§ 1–204.101–.107 (2001) was adopted by the District of Columbia Council in 1978 as an amendment to the basic congressional statute,

■ This is the seventh time that we have addressed whether an initiative, either passed or proposed, runs afoul of the law's prohibition on initiatives "appropriating funds." *See Dorsey v. District of Columbia Bd. of Elections & Ethics*, 648 A.2d 675 (D.C.1994); *Hessey v. District of Columbia Bd. of Elections & Ethics*, 601 A.2d 3 (D.C.1991) (en banc) (*Hessey II*); *District of Columbia Bd. of Elections & Ethics v. District of Columbia*, 520 A.2d 671 (D.C.1986); *Hazel v. United States*, 516 A.2d 944 (D.C.1986) (per curiam); *District of Columbia Bd. of Elections & Ethics v. Jones*, 481 A.2d 456 (D.C.1984); *Convention Center Referendum Committee v. District of Columbia Bd. of Elections & Ethics*, 441 A.2d 889 (D.C.1981) (en banc) (*Convention Center II*). We have said that "the word 'appropriations,' when used in connection with the functions of the Mayor and the Council in the District's budget process, refers to the discretionary process by which revenues are identified and allocated among competing programs and activities." *Hessey II, supra*, 601 A.2d at 19. Thus, "a measure which would intrude upon the discretion of the Council

to allocate District government revenues in the budget process is not a proper subject for initiative... whether or not the initiative[ ] would raise new revenues." *Id.* This guarantees that "matters relating to the local budget process [will] remain within the control of the Mayor and Council, and that initiatives [will] not create deficits or interfere with the locally elected officials' decisions about how District government revenues should be spent." *Id.* at 15.

■ Consistent with our interpretation of "laws appropriating funds", we have deemed unlawful any initiative that: 1) "block[s] the expenditure of funds requested or appropriated," *Convention Center II, supra*, 441 A.2d at 913–14 (plurality opinion);[7] 2) directly appropriates funds, *Jones, supra*, 481 A.2d at 460;[8] 3) requires the allocation of revenues to new or existing purposes, *Hessey II, supra*, 601 A.2d at 19–20;[9] 4) establishes a special fund, *id.*; 5) creates an entitlement, enforceable by private right of action, *id.* at 20 n. 34;[10] or 6) directly addresses and

adopted in 1973 establishing the present governmental structure of the District of Columbia, commonly called the Home Rule Act, but more formally known as the District of Columbia Self–Government and Government Reorganization Act. *See Hessey v. District of Columbia Bd. of Elections & Ethics*, 601 A.2d 3, 11–14 (D.C.1991) (en banc) (*Hessey II*). Pursuant to that amendment, the District of Columbia Council enacted implementing legislation, the Initiative Procedures Act, now codified as § 1–1001.16. *Id. See also District of Columbia Bd. of Elections & Ethics v. Jones*, 481 A.2d 456, 458 (D.C.1984). As we noted in *Hessey II*, the implementing legislation in a certain sense expands the scope of the "laws appropriating funds" language to encompass the entire budget process. 601 A.2d at 14–15. *See also Dorsey v. District of Columbia Bd. of Elections & Ethics*, 648 A.2d 675, 677 (D.C.1994).

7. In *Convention Center II*, the initiative sought to halt the expenditure of funds already ap-

propriated for construction projects. *See generally*, 441 A.2d 889.

8. The initiative at issue in *Jones* called for automatic increases in unemployment benefits. *See* 481 A.2d at 460.

9. In *Hessey II*, one initiative required certain commercial developers to contribute funds to a newly established trust fund, which would be used for the construction of low income housing. A second initiative imposed a surcharge on certain commercial property, and the collected revenues were to be placed into an existing, Council-created, trust fund. *See* 601 A.2d at 6.

10. In *District of Columbia Bd. of Elections & Ethics v. District of Columbia*, the panel determined that an initiative creating an entitlement, enforceable by private right of action, to a certain type of overnight shelter was permissible. *See* 520 A.2d at 675–76. How-

eliminates a source of revenue, *Dorsey, supra,* 648 A.2d at 677.[11] Initiatives can, however, "propose authorizing legislation that the Council could enact," raise revenues without directing their allocation, or "contain[ ] a 'non-binding policy statement' that revenues should be allocated for specified purposes." *Hessey II, supra,* 601 A.2d at 19.

■ "We are required to construe the right of initiative liberally, and may impose on the right 'only those limitations expressed in the law or 'clear[ly] and compelling[ly]' implied,' " *Hessey v. Burden,* 584 A.2d 1, 3 (D.C.1990) (*Hessey I*) (quoting *Convention Center II, supra,* 441 A.2d at 913). Nonetheless, as we said in our most recent case on the subject, the exclusion from initiatives of laws appropriating funds is "very broad[ ]...'extend[ing] ... to the full measure of the Council's role in the District's budget process.' " *Dorsey, supra,* 648 A.2d at 677 (quoting *Hessey II, supra,* 601 A.2d at 20).

**B.**

■ To ascertain the scope and meaning of an initiative, we examine the language of the initiative itself. *Convention Center II, supra,* 441 A.2d at 898 ("[N]either the Board nor the court truly can determine whether an initiative conforms to the limitations on the initiative right unless it scrutinizes the very bill that would become law."). In so doing, this court applies the traditional rules of statutory construction. We begin by examining the plain language of the disputed initiative. *Cass v. District of Columbia,* 829 A.2d 480, 482 (D.C.2003). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used ... [I]n examining the statutory language, it is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (citations omitted). The provisions of an initiative, like "[s]tatutory provisions[,] are to be construed not in isolation, but together with other related provisions." *Carey v. Crane Service Co., Inc.,* 457 A.2d 1102, 1108 (D.C. 1983) (citation omitted). " 'A basic principle [of statutory construction] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.' " *United States Parole Comm'n v. Noble,* 693 A.2d 1084, 1107–08 (D.C.1997) (quoting *Veney v. United States,* 681 A.2d 428, 433 (D.C. 1996) (en banc)).

■ After reviewing its language, we are constrained to conclude that the Treatment Instead of Jail Initiative, fairly read, would, if to be effective in accordance with its terms, compel the allocation of funds and is therefore a law appropriating funds and an impermissible subject for an initia-

---

ever, because the decision in *Hessey II* "equate[d] 'laws appropriating funds' with 'acts allocating funds,' " the en banc court determined that the previous panel decision "was flawed." *Hessey II, supra,* 601 A.2d at 19, 20 n. 34. The court reasoned that where an initiative creates an entitlement that is enforceable by private right of action, "interference with the Council's allocation power results from the fact that by obtaining a money judgment against the District government, a litigant would force the Council to allocate funds to pay the judgment." *Id.* at 20 n. 34.

11. The disputed initiative in *Dorsey* provided certain amnesty from and eliminated the impoundment of District-registered vehicles due to outstanding parking fees, which the court determined interfered with the Council's ability "to identify and allocate revenues from penalties for late payment of traffic fines." 648 A.2d at 677.

tive under D.C.Code § 1–204.101(a). *See Hessey II, supra,* 601 A.2d at 19.

The purposes and intent of the Treatment Instead of Jail Initiative, as its very title indicates, are clear and explicit in the initiative itself. § 24–751.01. The Treatment Instead of Jail Initiative imposes numerous mandatorily-phrased obligations upon trial courts to effectuate its goals. The initiative requires that: "the court *shall* accept the offender's request for treatment;" "the court *shall* stay all criminal proceedings... and *shall* order the release of the offender;" the "court *shall* order an assessment of each [eligible] offender;" the "court *shall* review this treatment plan and *shall* adopt the treatment plan;" "the court *shall* designate an appropriate treatment provider or providers to administer the treatment plan;" "[t]he court *shall* require the offender to participate in and cooperate with the treatment program;" and "[t]he court *shall* order the offender to appear for treatment..." §§ 24–751.05(d), (e), .07(2), (3), (9) (emphasis added). The initiative's repeated use of the word "shall" creates mandatory provisions, with which the trial court would be obliged to comply. *Leonard v. District of Columbia,* 801 A.2d 82, 84–85 (D.C.2002) ("[t]he normal rule is that verbs such as 'must' or 'shall' denote mandatory requirements ... unless such construction is 'inconsistent with the manifest intent of the legislature or repugnant to the context of the statute.'") (citation omitted).

Moreover, the initiative establishes strict time constraints within which these obligations must be satisfied. The court must determine whether an offender is eligible for treatment "within 3 days of receipt of the request for treatment." §§ 24–751.05(b). Assessment of that offender by a "qualified treatment professional" must "be completed within 7 days." § 24–751.05(e). Finally, the offender must be ordered to appear for treatment "no later than 14 days after the court has found the offender to be eligible." § 24–751.07(9). The initiative allows the court to "authorize[ ] an extension of the date for entry into treatment" for "lack of space or other good cause shown." *Id.* However, "[n]o offender shall be required to wait more than 30 days to enter treatment." *Id.*

■ This mandatory language means, once in effect, the Superior Court would be obliged to comply with the initiative's provisions. "[C]ourts are bound by... legislation," *Myco, Inc. v. Super Concrete Co.,* 565 A.2d 293, 301 (D.C.1989), and "must enforce [statutes] while they exist." *McCurley v. National Sav. & Trust Co.,* 49 App.D.C. 10, 15, 258 F. 154 (1919). Plainly, however, the courts would be unable to comply with these mandatory duties in the absence of funding to establish and operate the treatment programs contemplated by, and indeed at the very heart of, the initiative.[12] *Cf. United States v. Alsbrook,* 336 F.Supp. 973 (D.D.C.1971).[13]

---

12. No argument is made that the initiative would not require additional funding. An affidavit to this effect was filed with the court from James Stimpson of the District of Columbia Office of the Chief Financial Officer.

13. In *Alsbrook,* the absence of appropriate facilities had undermined the implementation of the mandatory provisions of the Youth Corrections Act. 336 F.Supp. 973, 974. In ordering the creation of the necessary facilities, Judge Gesell emphasized that "[u]nless ade-

quate facilities [were] made available, the Court's role in sentencing [would] become[ ] merely advisory and it [would] lose[ ] the 'judicial power' to enforce its orders" under the statute. *Id.* at 980. *Cf.* D.C.Code §§ 11–921(a), –923(a) (providing the jurisdiction of the Superior Court); *Atchison v. District of Columbia,* 585 A.2d 150, 152 (D.C.1991) (including a Council member's statement that the Overnight Shelter Act's provision of the "right to adequate overnight shelter" "ha[d] been essentially operated by the courts... re-

The initiative does not in any way condition the court's .compliance with its dictates upon funding by the Council. While section 6(d) of the initiative subjects replacement therapy for ineligible offenders to Council funding, *see supra* note 5, the rest of the initiative has no such limitation. Principles of statutory construction bar us from reading any such general limitation into the operation of the initiative, especially in light of its explicit inclusion in section 6(d). *McCray v. McGee*, 504 A.2d 1128, 1130 (D.C.1986) (in statutory construction "there is an inference that all omissions should be understood as exclusions") (citations omitted). Appellants contend that the rest of the initiative is subject to funding by "operation of law" given the existence of D.C.Code § 1–204.101(a)'s prohibition, and we should read it as such.[14] Appellants' theory would have us read "subject to the allocation of funds" into every initiative and would mean that no initiative would ever be invalid for "appropriating funds" regardless of its language or the intent of the voters.[15] "This court will not read into an unambiguous statute language that is clearly not there." *Carter v. State Farm Mut. Auto. Ins. Co.*, 808 A.2d 466, 472 (D.C.2002). In any event, appellants' argument has no basis in section 1–204.101, which provides that the voters may propose laws except those "appropriating funds." Contrary to appellants' argument, a law appropriating funds does not lose that characteristic when it is introduced by the voters, but is improper for the initiative process precisely because it both triggers an appropriation of funds and has been proffered by the voters. Whether a law is proposed by the people or the Council does not alter the nature of that law. A law appropriating funds, thus, is not cleansed of its "appropriating" function when it is introduced or enacted by the voters.[16]

As an alternate analysis, appellants contend that, despite the absence of language conditioning court compliance with the initiative to the allocation of funding, any inability of the court to comply with the initiative or an offender to secure treatment resulting from the absence of or inadequate funding is not fatal. Instead, appellants say, the initiative contemplates the possibility of the absence of funding in subsection 5(f). That subsection, now § 24–751.05(f), provides that, "No person eligible for treatment in lieu of prosecution or incarceration under this chapter may be sentenced to a term of incarceration... unless such person has first been provided an opportunity for treatment under the terms of this section and such person has elected not to receive treatment, or such person has been removed from treatment under guidelines established by this chapter." That is, if no treatment plan is available because of lack of funding, the consequence is that the eligible offender will remain at large with the criminal proceed-

quiring the District to provide certain services").

14. Appellants also note that the initiative neither creates an entitlement to treatment nor establishes a special trust fund for treatment purposes but these factors are not conclusive.

15. If appellants were correct, the inclusion of the qualifying language in section 6(d) would not have been necessary.

16. Appellants might also be understood to make a related argument that the treatment provisions of the initiative should be read as containing an implied "subject to allocation of funds" provision, while the provisions leading up to treatment would remain effective as written. For the reasons set forth above as well as those discussed later in this opinion, we cannot accept such an interpretation of the initiative.

ings stayed.[17]

Subsection 5(f) makes no reference to funding or the absence thereof nor does it address the court's obligation to fulfill its statutorily imposed duties. More importantly, this indefinite release of offenders resulting from the lack of funding for treatment is totally inconsistent with the structure of the initiative, its enumerated purposes and its legislative history. The initiative provides as its purpose: "[t]o break the cycle of drug use, addiction and crime as early as possible by *guaranteeing* treatment and rehabilitation services to non-violent drug users..." § 24–751.03(1) (emphasis added).[18] The legislative history of the initiative, in this case, the short statement that was presented to the voters on the ballot, reads in part: "This initiative, if passed, *will:* Provide substance abuse treatment instead of conviction or imprisonment to eligible ... defendants charged with illegal possession or use of drugs." (emphasis added) The statement informed voters that the initiative "does not reduce penalties associated with any criminal offense," and the initiative was entitled "Treatment Instead of Jail for Certain Non–Violent Drug Offenders." The summary statement did not state that treatment was dependent upon the allocation of funding by the Council. Voters were not notified that in the absence of funding eligible offenders would not receive treatment and would not be incarcerated. In fact, the statement that the initiative would not "reduce penalties associated with any criminal offense" could

have led voters to believe that offenders who were not treated would·remain subject to the criminal process and incarceration. Neither the initiative's purpose nor the statement presented to those voters considering its enactment indicated that in the absence of funding by the Council, eligible offenders would be released without substance abuse treatment and without subjection to the criminal proceedings.

Under the initiative, the court cannot satisfy the mandatory provisions of the Treatment Instead of Jail Initiative, calling for the assessment and treatment of an eligible offender, without funding. When, due to lack of funding, the court cannot order an assessment or treatment in accordance with the initiative, criminal proceedings against eligible offenders remain stayed and eligible offenders cannot be incarcerated. A lack of funding for the initiative, thus, would not only preclude the realization of the very purposes for which the initiative was enacted, but would also have a consequence that could not have been contemplated by the voters. To avoid this unintended result, i.e. the release of untreated and unprosecuted eligible offenders, the mandatory provisions of the initiative compel the allocation of funding if the initiative is deemed to be in effect.

For the same reason, the provisions of the initiative which would compel funding cannot be severed under the initiative's severability clause. § 24–751.12 (providing that the invalidation of any pro-

---

17. Under § 24–751.05(d), when a court finds an offender eligible for treatment, the court shall stay the criminal proceeding and shall order the release of the offender if the offender is in custody due to the stayed criminal proceeding.

18. The plain meaning of guarantee is "to make certain: ensure." WEBSTER's II NEW COLLEGE DICTIONARY 493 (1995). *Cf. 1618*

*Twenty–First St. Tenants Ass'n v. Phillips Collection*, 829 A.2d 201, 203 (D.C.2003) ("In finding the ordinary meaning, 'the use of dictionary definitions is appropriate in interpreting undefined statutory terms.'") (quoting 2A SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.07 (5th ed. 1992)) (other citation omitted).

vision "or application thereof... shall not affect other provisions or applications... which can be given effect without the invalid provision or application"). After severing invalid provisions, the remaining provisions (§§ 24–751.01–.04, .05(a)–(d), .05(f), .06, .11, .12) would create a scheme whereby an offender would request treatment and, if deemed eligible for treatment, would be released from custody with the charges against him stayed indefinitely. As discussed above, such an outcome was not weighed by the voters who approved the initiative and contravenes the purposes for which the initiative was enacted-that is substance abuse treatment instead of incarceration and not release instead of incarceration. Therefore, the initiative is not severable. *See, e.g., McClough v. United States*, 520 A.2d 285, 289 (D.C.1987) (severance is not appropriate if without the invalid provisions, "the legislature would not have enacted the remaining provisions"); *United States ex rel. Guagliardo v. McElroy*, 104 U.S.App. D.C. 112, 117, 259 F.2d 927, 932 (1958) ("the general effect of a severability clause is to substitute for the presumption that the legislature intended its act to be effective as an entirety, the opposite presumption of severability; that is, that the legislature intended the act to be divisible.... this presumption [can] be overcome by considerations which make evident the inseverability of the provisions of the statute, or the clear probability that with the invalid part eliminated the legislature would not have been satisfied with what remains").

For the foregoing reasons, we hold that the Treatment Instead of Jail Initiative appropriates funds in violation of D.C.Code § 1–204.101(a) and was impermissibly adopted through the initiative process. Thus, the decision of the trial court to grant summary judgment in favor of the District is hereby

*Affirmed.*