Dorothy BRIZILL, et al., Appellants,

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS,**
Appellee,

and

**Barry Jerrels and Citizens for the VLT Initiative of 2006, Intervenors.**

No. 06–CV–686.

District of Columbia Court of Appeals.

Argued Sept. 21, 2006.

Decided Nov. 22, 2006.

———

Dorothy Brizill, pro se, with whom Thelma Jones and Anthony Muhammad, were on the brief, pro se, for appellants.

Terri D. Stroud, Staff Attorney, with whom Kenneth J. McGhie, General Counsel, was on the brief, for appellee.

Jeffrey D. Robinson, with whom Duane K. Thompson, Sarah L. Knapp, Washington, DC, and Deborah Deitsch–Perez, Dallas, TX, were on the brief, for intervenors.

Before KRAMER and FISHER, Associate Judges, and NEWMAN, Senior Judge.

FISHER, Associate Judge:

Appellants Brizill, Jones, and Muhammad sued the District of Columbia Board of Elections and Ethics (the "Board") in the Superior Court, asserting that the Video Lottery Terminal Gambling Initiative of 2006 is not a proper subject of initiative. Concluding that approval of the VLT Gambling Initiative would exceed the legislative powers granted to the District and its citizens by the Home Rule Act, we agree with appellants.

### I. The Procedural Background

On April 10, 2006, intervenor Barry Jerrels presented to the Board a proposed initiative to allow video lottery terminals

in the District of Columbia. According to the summary statement describing the initiative, video lottery terminals are "very similar to slot machines." If approved by the voters, the initiative would, among other things, order that the District of Columbia Lottery and Charitable Games Control Board grant licenses for operating VLTs; regulate the operation of VLT facilities; and issue permits for persons who manufacture, distribute, service, repair, or perform maintenance on VLTs within the District of Columbia. The initial VLT gambling facility would be located at the intersection of Martin Luther King, Jr., Avenue and Good Hope Road in the Anacostia neighborhood. Additionally, the proposed initiative would require the Lottery and Charitable Games Control Board to grant a Temporary Initial License to the applicant who owns or leases, and has the right to possess, more than fifty percent of the land designated as the initial VLT site.

At a meeting on May 3, 2006, the Board approved the proposed legislation as a proper subject of initiative.[1] It then formulated the short title, summary statement, and legislative text of the initiative, which were published in the D.C. Register on May 12, 2006.

As registered qualified voters, appellants filed their complaint challenging the VLT Gambling Initiative on May 22, 2006. Appellant Dorothy Brizill is executive director of DCWatch (a government watchdog organization in the District), appellant Thelma Jones is president of the Fairlawn Citizens Association (a civic organization in the Anacostia–Fairlawn community), and appellant Anthony Muhammad is one of the ANC commissioners for the Anacostia community. On June 8, 2006, the Superior Court dismissed the complaint, and appellants timely noticed this appeal.

Appellants challenge the VLT Gambling Initiative on three grounds: (1) that it conflicts with the Johnson Act, 15 U.S.C. §§ 1171–1178 (2006), a Congressional enactment prohibiting the transportation, manufacture, possession, and use of gambling devices in the District of Columbia and certain other jurisdictions; (2) that it impermissibly requires the appropriation of funds; and (3) that it improperly invades the authority of the Mayor by dictating matters of administration. Because the initiative conflicts with, and would amount to a repeal of, the Johnson Act, we hold that it is not a proper subject for initiative. We do not reach the other issues raised by appellants.

## II. Legislative Power

This appeal does not require an extended discussion of legislative power in the District of Columbia. In brief, the United States Constitution vests in Congress the power to legislate for the District of Columbia "in all cases whatsoever." U.S. CONST. art. I, § 8, cl. 17. It is often said that Congress has "plenary" power to legislate for the District. *See, e.g., Palmore v. United States,* 411 U.S. 389, 397, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). However, in 1973 Congress enacted D.C.Code § 1–201.01 *et seq.,* popularly known as the District of Columbia Home Rule Act, delegating some, but not all, of its legislative powers to the Council of the District of Columbia while retaining ultimate legislative authority over the District. *See* D.C.Code § 1–206.01. *See also District of Columbia v. Greater Washington Central*

---

1. The Initiative, Referendum, and Recall Procedures Act of 1979, as amended, establishes procedures for enacting law in the District of Columbia through voter initiatives. D.C.Code § 1–1001.16 (2001). Among other things, that

Act requires the Board to reject the proposed measure if it is not a proper subject of initiative under Title IV of the Home Rule Act (enumerating the powers of the Council of the District of Columbia). § 1–1001.16(b)(1).

*Labor Council, AFL–CIO,* 442 A.2d 110, 113 (D.C.1982). The Home Rule Act contains several limitations on the power delegated to the Council. D.C.Code § 1–206.02 (2001), *formerly* D.C.Code § 1–233 (1981). Most importantly for this case, Congress declared that "[t]he Council shall have no authority to ... enact any act to amend or repeal any Act of Congress ... which is not restricted in its application exclusively in or to the District." D.C.Code § 1–206.02(a)(3).

Under certain circumstances the citizens of the District may exercise legislative power directly. For example, the qualified registered voters of the District of Columbia generally may approve through initiative any law that the Council may enact through legislation. D.C.Code § 1–204.101(a), *formerly* D.C.Code § 1–281(a) (1981); *Convention Ctr. Referendum Comm. v. District of Columbia Bd. of Elections and Ethics,* 441 A.2d 889, 897 (D.C.1981) (en banc) (plurality opinion) ("absent express or implied limitation, the power of the electorate to act by initiative is coextensive with the power of the legislature to adopt legislative measures"); *id.* at 921 (concurring opinion of Newman, C.J., joined by Pryor, J.) (incorporating by reference the rationale of the opinion Chief Judge Newman wrote for the division majority, see 441 A.2d 871, 876 (D.C.1980) ("the power of the electorate to propose laws through the initiative is co-extensive with the power of the legislative branch of government to pass legislative acts, ordinances, and resolutions")). Nevertheless, the power of initiative is subject to certain additional limitations, including that an ini-

tiative may not appropriate funds. D.C.Code § 1–204.101(a). *See District of Columbia Bd. of Elections and Ethics and District of Columbia (Campaign for Treatment) v. District of Columbia,* 866 A.2d 788, 793–94 (D.C.2005); *Hessey v. District of Columbia Bd. of Elections and Ethics,* 601 A.2d 3, 16 (D.C.1991) (en banc). Additionally, an initiative may not be administrative in nature. *Hessey v. Burden,* 615 A.2d 562, 578 (D.C.1992).

## III. The Johnson Act

In 1951, Congress enacted what has become popularly known as the Johnson Act. Pub.L. No. 81–906, 64 Stat. 1134 (1951) (current version at 15 U.S.C. §§ 1171–1178). The stated purpose of the Johnson Act is "to prohibit transportation of gambling devices in interstate and foreign commerce." Pub.L. No. 81–906 (title). The 1951 Act also prohibited, among other things, the use and possession of gambling devices within the District of Columbia and certain other jurisdictions.

Section 1172 of the Johnson Act prohibits the transportation of gambling devices "to any place in a State or a possession of the United States from any place outside of such State or possession." 15 U.S.C. § 1172(a).[2] However, section 1172 contains an opt-out provision by which "states" can exempt themselves from the provisions of "this section." *Id.* Although the District of Columbia was not originally defined as a "state" for purposes of the Johnson Act, Congress amended that definition in 1962 to include the District.[3] *See* Gambling Devices Act of 1962, Pub. L. No.

**2.** Section 1172 states in relevant part:
 (a) General rule. It shall be unlawful knowingly to transport any gambling device to any place in a State or a possession of the United States from any place outside of such State or possession: *Provided,* That this section shall not apply to transportation of any gambling device to a place in

any State which has enacted a law providing for the exemption of such State from the provisions of this section. . . .

**3.** As amended, 15 U.S.C. § 1171(b) provides that "[t]he term 'State' includes the District of Columbia, Puerto Rico, the Virgin Islands, and Guam."

87–840, § 3, 76 Stat. 1075 (1962) (codified as amended at 15 U.S.C. § 1171(b)).

Section 1175 of the Johnson Act, by contrast, goes well beyond regulating the transportation of gambling devices in interstate and foreign commerce and imposes wide-ranging restrictions within the District of Columbia and certain possessions and territories of the United States.[4] 15 U.S.C. § 1175(a). That section makes it unlawful to "manufacture, recondition, repair, sell, transport, possess, or use any gambling device" within one of the covered jurisdictions. *Id.* The District of Columbia is named individually as a jurisdiction covered by section 1175, and Congress did not change that in 1962 when it defined the District as a "state." Moreover, there is no opt-out provision in section 1175.[5] The result is that the prohibitions contained in section 1175 continue to apply to the District of Columbia.

## IV. The Initiative

 The VLT Gambling Initiative would authorize the transportation, possession, repair and use of video lottery machines within the District of Columbia. However, these very same activities are prohibited by section 1175 of the Johnson Act, which clearly applies to the District of Columbia.[6] *See* 15 U.S.C. § 1175(a). Most importantly for present purposes, section 1175 also applies to jurisdictions outside the District of Columbia, including "any possession of the United States, . . . Indian country . . . [and] the special maritime and territorial jurisdiction of the United States. . . ." *Id.*[7] Thus, section 1175

4. Section 1175 provides in part:
 (a) General rule. It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 [of the United States Code] or within the special maritime and territorial jurisdiction of the United States. . . .

5. Congress did not expressly amend or repeal section 1175 to make it inapplicable to the District of Columbia, and it is a cardinal rule of statutory interpretation that "repeals by implication are not favored." *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *United States Parole Comm'n v. Noble,* 693 A.2d 1084, 1087 (D.C. 1997), opinion adopted, 711 A.2d 85, 86 (D.C. 1998) (en banc). To find a repeal by implication, the intention of Congress to repeal the earlier act must be "clear and manifest." *Noble,* 693 A.2d at 1087 (quoting *Speyer v. Barry,* 588 A.2d 1147, 1165 (D.C.1991)). Neither the legislative history nor the plain language of the 1962 amendments exhibits a "clear and manifest" intention to repeal section 1175 as it applies to the District. Furthermore, the opt-out provision in section 1172 applies only to "this section." See note 2, *supra.*

6. The Board and intervenors do not contest that these video lottery terminals are "gambling devices" covered by the Johnson Act. *See* 15 U.S.C. § 1171(a) (defining "gambling device"). *See also Citizen Band Potawatomi Indian Tribe of Oklahoma v. Green,* 995 F.2d 179, 181 (10th Cir.1993) (affirming district court's conclusion "that the Johnson Act would prohibit the importation of VLTs onto the Tribe's land").

7. It is widely known that there are gambling casinos on many Indian reservations, and the reader may wonder how this is possible given the prohibitions of section 1175 of the Johnson Act. On October 17, 1988, Congress passed the Indian Gaming Regulatory Act ("IGRA"), expressly permitting gambling on Indian reservations under certain circumstances. Pub.L. No. 100–497, 102 Stat. 2467 (codified at 25 U.S.C. §§ 2701 to 2721). Section 2710 of IGRA permits the use of gambling devices, including slot machines, where: (1) the Chairman of the National Indian Gaming Commission and the Indian tribe's governing body authorize such activity; (2) the Indian reservation is within a State that permits such activity; and (3) the activity is regulated by the terms of a Tribal–State compact between the tribe and the State in which the tribal lands are located. 25 U.S.C. § 2710(d)(1). Section 2710(d)(6) of IGRA expressly exempts certain types of gambling from the prohibitions of section 1175 of the Johnson Act. *See generally* Deborah F. Buckman, Annotation, *Interplay Between Indian*

obviously "is not restricted in its application exclusively in or to the District." D.C.Code § 1–206.02(a)(3). Because section 1175 does not apply exclusively to the District, neither the Council nor the voters through initiative may amend or repeal this Congressional prohibition on using and possessing gambling devices within the District of Columbia.[8] *Id. See McConnell v. United States,* 537 A.2d 211, 214–15 (D.C.1988) ("although the Council ... may repeal a congressionally-enacted statute limited in application to the District of Columbia, the Council may not repeal a federal statute of broader application"). *Cf. Greater Washington Central Labor Council,* 442 A.2d at 116 (Council could repeal workers' compensation legislation enacted by Congress because, although program was administered by the Secretary of Labor, it was "a local law enacted by Congress which was restricted in its application 'exclusively in or to the District' ").

## V. Conclusion

The VLT Gambling Initiative is not a proper subject of initiative because its adoption would be an attempt to repeal or amend an Act of Congress which does not apply exclusively to the District. This conclusion is dispositive, so we do not reach the other two challenges involving appropriation of funds and infringement on administrative authority. We declare the VLT Gambling Initiative invalid and instruct the Superior Court to grant judgment for plaintiffs. The judgment of the Superior Court is hereby

*Reversed and remanded.*

---

*Gaming Regulatory Act and Johnson Act,* 2 A.L.R. Fed.2d 241 (2005). We note, in addition, that section 1175 does not apply to Puerto Rico and the Virgin Islands, which are not expressly mentioned in its text and are defined as "states," not possessions. *See* 15 U.S.C. § 1171(b).

**8.** Appellee and intervenors argue that section 1175 is "essentially a local law" because it applies only to jurisdictions where Congress has the ultimate legislative authority—in other words, where Congress may act as a "local," rather than a federal, legislature. They also claim that the Council has the power to amend or repeal acts passed by Congress in its capacity as the "local" lawmaker for the District.

Accepting this argument would require us to ignore the basic rules of statutory interpretation. "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Jeffrey v. United States,* 892

A.2d 1122, 1128 (D.C.2006) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc)). The Home Rule Act does not use shorthand references to laws of "local" or "national" scope. Rather, its language is clear and unambiguous: "The Council shall have no authority to ... enact any act to amend or repeal any Act of Congress, ... *which is not restricted in its application exclusively in or to the District.*" D.C.Code § 1–206.02(a)(3) (emphasis added).

As we have demonstrated, section 1175 of the Johnson Act does not apply *exclusively* in or to the District of Columbia. If Congress had intended the Council, or District voters, to have the power to amend or repeal all Acts of Congress constituting "local law," it could have used such language in the Home Rule Act. However, it employed more precise language—"not restricted in its application exclusively in or to the District"—which precludes the voters from amending or repealing section 1175 by approving the VLT Gambling Initiative.